579 P.2d 127

**STATE of Idaho, Plaintiff and Respondent,**

v.

**Jose PEREZ and Cirilo Morin Mata, aka Chino, Defendants and Appellants.**

No. 12143.

Supreme Court of Idaho.

May 19, 1978.

Dennis E. Goff of Smith, McDonald & Goff, Nampa, for defendants and appellants.

Wayne L. Kidwell, Atty. Gen., P. Mark Thompson, Asst. Atty. Gen., Gordon S. Nielson, Senior Deputy Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff and respondent.

BISTLINE, Justice.

Jose Perez and Cirilo Morin Mata appeal from their jury conviction of unlawful delivery of a controlled substance, heroin. The evidence at trial showed that the sale was made to an undercover narcotics agent working for the City-County Narcotics Division of Canyon County. On the evening in question the agent, Fazio, received from his superior, Lt. Galland, $50 in recorded currency with which to make a narcotics purchase. Fazio then drove to pick up his contact, Perez. Fazio and Perez went first to Caldwell and then to Nampa. In Nampa, Perez left Fazio in the car and disappeared down a dirt road that ran between some houses. Perez reappeared with Mata 10 to 15 minutes later in a car driven by Mata. Perez motioned for Fazio to approach the car, whereupon Fazio did so and Perez received the said $50 in currency from Fazio. Perez handed the currency over to Mata in exchange for two tinfoil bindles. Fazio and Perez then drove away in Fazio's car. Later, before leaving Fazio, Perez took a cut of the contents of one of the bindles. Fazio then rendezvoused with Lt. Galland and turned the tinfoil bindles over to him. When Perez and Mata were arrested three weeks later, Mata had in his possession one of the twenty-dollar bills for which the serial number had been recorded.

On appeal Perez and Mata argue: (1) that the trial court erred in admitting the twenty-dollar bill into evidence; (2) that their conviction cannot be sustained on the uncorroborated testimony of agent Fazio who, they contend, was an accomplice to the crime, and (3) that they did not receive reasonably competent assistance of counsel at trial.

Mata was arrested and the twenty-dollar bill seized from him 23 days after the alleged illegal transaction. It is argued that this time interval rendered the twenty-dollar bill too remote to be admissible as evidence. This Court has heretofore held that the admissibility of evidence in the face of a remoteness objection is a matter for the considered discretion of the trial court:

Objection to the introduction of evidence on the ground of remoteness in time "goes only to the weight or credibility of such evidence and is without merit, for if the evidence is otherwise admissible the weight to be given or credibility of the evidence is generally for the trier of the facts." *In re Goan's Estate*, 83 Idaho 568, 574, 366 P.2d 831, 835, 97 A.L.R.2d

384 (1961). See also *Koch v. Elkins*, 71 Idaho 50, 225 P.2d 457 (1950) and *Hooton v. City of Burley*, 70 Idaho 369, 219 P.2d 651 (1950).

"Ordinarily remoteness affects the weight of evidence rather than its admissibility." *Casey v. Casey*, 97 Cal.App.2d 875, 882, 218 P.2d 842, 847 (1950); *Moiola v. Paggi*, 5 Cal.App.2d 279, 281, 42 P.2d 331, 332 (1935).

"The determination of the question whether evidence is or is not too remote is for the determination of the trial court and it is clothed with wide discretion in this regard." *Casey v. Casey*, 97 Cal. App.2d at 882, 218 P.2d at 847; *Moiola v. Paggi*, 5 Cal.App.2d at 281, 42 P.2d at 332. See also *Clement v. Cummings*, 212 Or. 161, 317 P.2d 579 (1957); *Zollars v. Barber*, 140 Cal.App.2d 502, 295 P.2d 561 (1956); *Adrian v. Elmer*, 178 Kan. 242, 284 P.2d 599 (1955).

*Blankenship v. Brookshier*, 91 Idaho 317, 322, 420 P.2d 800, 805 (1966).

■ Agent Fazio testified to seeing the recorded currency passed to Mata; thus, Mata's possession of the bill at his arrest is logically probative of his participation in the sale. The admission of the twenty-dollar bill was within the trial court's wide discretion. The weight to be given this evidence was properly for the jury and counsel was entitled to argue this point in his summation.

Appellants argue that their convictions can not be sustained on the uncorroborated testimony of agent Fazio who, they say, because he "aided, abetted, advised and encouraged the sale of heroin," was an accomplice. I.C. §§ 18–204 and 19–1430. They point to I.C. § 19–2117 for the proposition that the testimony of an accomplice must be corroborated.

■ The general rule is that one who participates in a crime for the purpose of gathering evidence against another participant is not an accomplice. *State v. Dawson*, 40 Idaho 495, 235 P. 326 (1925); 23 C.J.S. *Criminal Law* § 787 (1961). An informer or agent in the employ of the police

who makes a narcotics purchase from a suspected seller is not an accomplice. 23 C.J.S. *Criminal Law* §§ 788, 798(16) (1961). A person who participates in criminal activity only as an agent of law enforcement lacks the requisite criminal intent. Since "[i]n every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence," I.C. § 18–114, the agent can not be said to have aided or abetted the commission of the crime within the contemplation of I.C. § 18–204. *State v. Johnson*, 112 Ohio App. 124, 165 N.E.2d 814, 824 (1960); *City of Seattle v. Edwards*, 50 Wash.2d 735, 314 P.2d 436, 438 (1957); 23 C.J.S. *Criminal Law* § 787 (1961).

■ We see no error in the trial court's holding that agent Fazio was not an accomplice of Perez and Mata. Hence the conviction may be sustained on his uncorroborated testimony.[1]

Appellants' final argument is that they were denied the reasonably competent assistance of counsel. The standard by which the performance of trial counsel will be judged was set forth in *State v. Tucker*, 97 Idaho 4, 8, 539 P.2d 556, 560 (1975), where, in overruling *State v. McClellan*, 96 Idaho 569, 532 P.2d 574 (1975), we adopted the language of *United States v. DeCoster*, 159 U.S.App.D.C. 326, 331, 487 F.2d 1197, 1202 (1973): "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." To flesh out this shorthand standard, we recognized the American Bar Association Standards Relating to the Defense Function (Approved Draft 1971) as applicable to define the duties owed by defense counsel to his client.

Perez and Mata specify ineffectiveness of counsel in failing to move for independent inspection and analysis of the contents of the two tinfoils. On this record, we are not in a position to know that counsel did in fact fail to so move. A discovery and inspection motion appears to have been made, which included a request for information on tangible objects in the possession of the

---

1. Since we hold that Fazio was not an accomplice, it is not necessary to discuss whether or not there actually was corroboration of his testimony.

prosecution. A copy of that motion was not included in the clerk's record. Were we to assume that counsel failed to request an independent inspection, it does not necessarily follow that such amounted to inadequate assistance of counsel.

That the substance in question was not heroin is not argued. If it be that after trial appellants ascertained that the substance was not heroin, they have made no motion based upon newly discovered evidence; nor have they offered to augment the record with a post-trial analysis refuting the conclusion of the State's chemist. The argument boils down to an assertion that, regardless of the facts and circumstances, appellants' trial counsel should have sought an independent examination of the alleged contraband and that such is standard operating procedure in every narcotics case.

■ The obligation of defense counsel is to conduct a prompt and thorough pretrial investigation, which should include efforts to secure information in the possession of the prosecution and law enforcement authorities. ABA Standards for the Defense Function § 4.1 (Approved Draft 1971). However, the course of the investigation will naturally be shaped by a defendant's disclosure to his counsel, by his mental condition, by counsel's preliminary knowledge of the evidence against the defendant and by a variety of factors, many peculiar to each given case.

Should a motion for independent inspection be automatically made by defense counsel in every narcotics case? One text writer, in giving advice to defense attorneys, outlines some of the factors to consider in deciding whether to make such a motion:

The "affirmative" defense [independent analysis with a view to establishing that the substance is not heroin] should not be used unless there is a definite reason to believe that the substance is not what the government claims it to be. Nothing is more futile than to make a motion demanding a sample of the alleged narcotic for analysis by a defense expert, only to have the defense expert confirm the find-

ing of the government chemist. It also helps if the defense chemist identifies the alleged contraband as an innocuous substance. The defense that a capsule of alleged heroin is merely a harmless antibiotic will meet with a better reception than the defense that it is not heroin but cocaine. Finally, the circumstances of the arrest will have an important effect on the success of the "affirmative" defense. . . . [I]f the defendant sold drugs to an undercover agent, receiving money and representing the substance to be heroin, the attempt to discredit the identification of the drug will probably be ⋅regarded as the effort of a "guilty" defendant to escape justice on a legal technicality.

D. Bernheim, Defense of Narcotics Cases, § 4.02 at 4–14 (1977 rev.).

■ Of importance here is the fact that *alibi* was the defense relied upon. As far as the record reveals, counsel appears to have been diligent in preparing this defense. He did, for example, make a motion to suppress the twenty-dollar bill with the recorded serial number; had the motion been successful it would have greatly enhanced the defense. Given the alibi defense, the many considerations necessary to a decision to request an independent analysis, and the fact that appellants have pointed to nothing which casts the slightest suspicion on the State's identification of the substance, this record did not sustain a contention that trial counsel's alleged failure to obtain an inspection and analysis of the substance amounts to a denial of adequate assistance of trial counsel.

■ Appellants claim next that trial counsel's cross-examination of the State's chemist was damaging to them because of a failure to cross-examine on his qualifications and a failure to expose weaknesses in the testing procedures used. The decision whether and how to conduct cross-examination is a strategic decision which is the exclusive province of the attorney after consultation with his client. ABA Standards for the Defense Function § 5.2(b) (Approved Draft 1971). We have said several times that we will not attempt to second-guess trial counsel's strategic deci-

sions unless those decisions are made "upon the basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *Tucker*, 97 Idaho at 10, 539 P.2d at 562.

Appellants merely point to counsel's failure to question the witness about his qualifications. They do not argue, as required by *Tucker*, that this decision was based on any shortcomings of counsel capable of objective evaluation. We again note the advice of Mr. Bernheim: "The decision to challenge the chemist's expertise must be carefully weighed. If the police chemist actually is well qualified, a voir dire examination would be folly, for it would bolster the expert's stature." D. Bernheim, *supra*, § 4.02 at 4–20. Nothing in the record suggests that the State's chemist was not qualified.

As to counsel's cross-examination on the testing procedures, we note that he did place before the jury the facts that the color tests are nonspecific, and that none of the other tests performed are independently conclusive. Appellants do not point to any weaknesses in the testing procedures used. Neither do they establish anything about counsel's cross-examination that leads to even a suspicion that it was based on inadequate preparation.

■ On this record, we observe no basis for questioning counsel's cross-examination on the testing procedures, or his decision not to examine the expert witness' qualifications. These instances of alleged ineffectiveness appear to be purely tactical decisions and since appellants have not shown that the *Tucker* standard was violated, such decisions can not form the basis of an ineffectiveness claim.

Appellants argue finally that trial counsel was ineffective because he failed to object to the admission into evidence of the two tinfoils on the ground that there was a break in the chain of custody. Because it is not clear where appellants claim the break in the chain of custody lies, we have reviewed the record and we find nothing which would support such an argument. We can not speculate that evidence does exist which might establish either that the tinfoils were not the ones purchased from Mata, or that there was any tampering.

■ Our recent opinion in *State v. Crook*, 98 Idaho 383, 384, 565 P.2d 576, 577 (1977), discussed the requirements for admissibility of physical evidence.

As a general rule in criminal proceedings, an exhibit must be shown to be in substantially the same condition when offered into evidence as it was when the crime was committed. However, the party offering the exhibit need not exclude all possibility of tampering. Where the court is satisfied that in all reasonable probability the article has not been changed in any material respect, the article is admissible into evidence. *Accord, State v. Collinsworth*, 96 Idaho 910, 539 P.2d 263 (1975); *State v. Griffith*, 94 Idaho 76, 481 P.2d 34 (1971). Here the testimony on the chain of custody together with the absence of any evidence of mishandling or alteration was ample to support the conclusion that the tinfoils and their contents had not been changed in any material aspect. *See People v. Riser*, 47 Cal.2d 566, 305 P.2d 1, 10 (1956); *People v. Lozano*, 57 Cal.App.3d 490, 127 Cal.Rptr. 204 (1976). Since it was clearly reasonable for the trial judge to admit the tinfoils into evidence, counsel's failure to object to their admission can not support a claim of ineffectiveness. "No standard of trial court competency requires counsel to make needless objections only to have his objections overruled." *State v. Morris*, 97 Idaho 420, 423, 546 P.2d 375, 378 (1976); *accord, Goodrick v. State*, 98 Idaho 124, 126, 559 P.2d 303, 305 (1977).

On the present record before us, we conclude that appellants' claim of a denial of reasonably competent assistance of counsel is not supported *by this record*.

Judgment of conviction and sentences affirmed.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.