644 P.2d 985
**STATE of Idaho, Plaintiff-Respondent,**

v.

**Hector O'CAMPO, Defendant-Appellant.**

No. 13634.

Court of Appeals of Idaho.

April 13, 1982.

William J. Tway, Tway & Tway, Boise, for defendant-appellant; Anton Hohler, Boise, on brief.

David H. Leroy, Atty. Gen., Lance Churchill, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

When Hector O'Campo stepped off an airplane at the Boise airport, the police were waiting for him. They seized from his jacket a bottle containing phencyclidine (PCP), and took him into custody. O'Campo was convicted of possession of a controlled substance, with intent to deliver, a felony under I.C. § 37–2732. In this appeal he raises three principal issues: (1) Did a search warrant held by police at the airport authorize seizure of the bottle and its contents? (2) Was the PCP sufficiently identified at the airport to justify seizing it? (3) Did the state prove "intent to deliver" the controlled substance? We affirm the judgment of conviction.

I

Before he was arrested at the airport, O'Campo had been the subject of a police investigation spanning several months. When the police received information that O'Campo had gone to California, to purchase controlled substances, they applied for a warrant to search his person and luggage upon his return. In sworn testimony supporting the application, police investigators gave their opinions as to the particular substances O'Campo was most likely to be carrying. The magistrate issued a warrant authorizing the police to search for "controlled substances to-wit: cocaine, mint leaf containing P.C.P., powdered P.C.P., and marijuana."

When O'Campo arrived at the airport, the police observed him holding a jacket over his arm. There appeared to be an object under or within the jacket. According to one of the police observers, O'Campo walked through the airport terminal and engaged a taxi. He placed his jacket "gingerly" inside the automobile, then re-entered the terminal and walked to the baggage claim area. After he claimed a suitcase, the police escorted him to the airport security office.

A search of O'Campo's person and the suitcase revealed nothing except documents indicating that O'Campo had used an assumed name. However, one of the police investigators went to the taxi, retrieved the jacket, and brought it to the security office. A search of the jacket revealed a transparent "Smirnoff's" vodka bottle containing a

"yellowish" liquid. Because the bottle did not contain a clear liquid, the police investigator believed that the bottle held something other than vodka. As he began to unscrew the bottle cap, the investigator noticed a hiss, a release of pressure, and the odor of ether. The investigator was familiar with PCP, and he later testified that ether is used in "processing" PCP. He further testified, "I retightened the cap on the bottle and at that time I was somewhat convinced that the bottle contained, possibly, PCP." The bottle and its contents were seized.

Before sending the bottle to the state laboratory for analysis, the police obtained another search warrant. The second warrant was identical to the first except that it mentioned "liquid PCP." The laboratory analysis showed that the bottle contained a thirteen percent liquid solution of PCP.

■ O'Campo argues that the location of the bottle, in his jacket, was outside the scope of places to be searched under the first warrant. The warrant authorized search of O'Campo's person and luggage. "Luggage" has been defined as "the belongings that a traveler carries with him." Webster's Third New International Dictionary 1344 (1976). O'Campo was carrying his jacket as he arrived at the airport. We hold that the jacket was within the scope of places to be searched under the warrant.

O'Campo next contends that the PCP solution was outside the scope of items for which the police were authorized to search under the first warrant. He further contends that the second warrant, mentioning liquid PCP, was invalid. Our construction of the first warrant makes it unnecessary to consider the validity of the second warrant.

■ The Fourth Amendment to the United States Constitution, and Article 1, Section 17 of the Idaho Constitution, prohibit "unreasonable" searches and seizures. Search warrants must describe with particularity the items to be seized. *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). Due to a constitutional preference for searches under warrant—as opposed to warrantless searches—descriptions in warrants, and their supporting affidavits, should be interpreted in a "commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Moreover, where the purpose of the search is not to find a specific item of property, but to find a certain type of property, which by reason of its character is illicit or contraband, a more general description will be tolerated. *E.g., People v. Schmidt*, 172 Colo. 285, 473 P.2d 698 (1970); *see generally* 2 W. LaFave, Search & Seizure § 4.6, at 101–02 (1978).

By definition, controlled substances are contraband. These substances may appear in a multitude of forms and combinations. Generic descriptions, by statutory reference, such as "controlled substances," have been held to satisfy the constitutional requirement of particularity. *E.g., State v. Quintana*, 87 N.M. 414, 534 P.2d 1126, *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

In this case the description—"controlled substances to wit: cocaine, mint leaf containing P.C.P., powdered P.C.P., and marijuana"—contained greater detail than was constitutionally required. O'Campo contends that the extra detail, following the phrase "to wit," restricted the scope of the warrant to the precise forms of controlled substances enumerated, and excluded the liquid solution of PCP. The district court, in a thoughtful memorandum decision, rejected O'Campo's contention. The court noted that the scope of a warrant should not be construed more narrowly than an affidavit of probable cause submitted in support of the application for the warrant. *State v. Constanzo*, 76 Idaho 19, 276 P.2d 959 (1954). The court found that the affidavit in this case had embraced all controlled substances. The court concluded that to suppress evidence of the PCP solution would "exalt form over substance."

We agree with the district court's conclusion. The affidavit plainly showed that the purpose of the search extended to any controlled substances O'Campo may have been

carrying. However, we do not join the district court in reading the actual language of the warrant as though it incorporated the words of the affidavit. The warrant referred to an affidavit "filed herewith." The "affidavit" actually consisted of sworn testimony, given orally before a magistrate and later transcribed. It does not appear from the record that a transcript of the testimony was appended to, or filed or served contemporaneously with, the search warrant.

■ The parties in this case have cited no Idaho authority defining how an affidavit must be identified to a warrant in order to supplement the descriptive language in the warrant. However, federal courts of appeal have required that the affidavit be physically attached and incorporated into the warrant by reference. *E.g., United States v. Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317 (9th Cir. 1981); *In re Application of Lafayette Academy, Inc.,* 610 F.2d 1 (10th Cir. 1979). Without deciding whether attachment and incorporation by reference should be required in Idaho, we hold, in this case, that no satisfactory connection of any kind between the warrant and the "affidavit" was established. Therefore, while the "affidavit" informs us of the purpose of the search, the description of property to be seized is limited to the language of the warrant itself.

The police were authorized by the warrant to search for PCP, and they found it. The PCP was not found on mint leaves or in powdered form, as recited by the warrant, but was contained in a liquid solution. However, it was still PCP. It had not lost its identity; it had merely taken a different form. PCP is a "Schedule II" controlled substance under Idaho Code § 37–2707(e). The statute expressly provides that this schedule includes "any material, compound, mixture, or preparation which contains any quantity of the . . . [specified] substances." Testimony at trial revealed that in liquid solution, PCP customarily is applied to plant material or paper used in cigarettes. There is no functional reason or statutory

basis to distinguish PCP in liquid solution from PCP in other forms. To employ such an artificial distinction would ignore the call of the United States Supreme Court for "commonsense and realistic" interpretations. *United States v. Ventresca, supra.*

■ We hold that where a warrant describes a controlled substance in a certain form, but the purpose of the search is not limited to finding the substance in that particular form, the scope of the warrant shall extend to alternate forms of the same substance which are similarly controlled by statute. We conclude that seizure of the PCP in liquid solution was authorized by the first search warrant. The district court's refusal to suppress the evidence will be sustained, although for reasons different from those set forth in the court's memorandum decision. *Cf. State v. Holder,* 100 Idaho 129, 131, 594 P.2d 639, 641 (1979).

II

O'Campo argues that the investigating officer who found the bottle at the airport had no authority to open it if he was not sure what it contained. O'Campo also urges that the officer failed positively to identify the contents of the bottle after opening it; and that seizure was improper without such identification.

■ These arguments confuse warrantless searches with searches under warrant. If contraband not described in a warrant is found in "plain view," the evidentiary significance of the items seized must be immediately apparent to the police. *E.g., Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). However, this requirement does not apply to searches under warrant. When conducting a search for material described in a warrant, an officer is not limited to what is immediately apparent on sight, but may open "plausible repositories" for such material. *State v. Davenport,* 55 Haw. 90, 516 P.2d 65, 72 (1973). In the instant case, the police knew they were looking for controlled substances. As noted by the district court:

To the officer's immediate observation when he saw the bottle, the bottle contained a substance alien to the type of bottle. Under these circumstances it appears entirely reasonable for the officer to make the more intrusive inspection by removing the cap of the bottle and smelling the substance.

 We agree. This leaves us with the question whether the officer adequately identified the substance before seizing the bottle. Identification with absolute certainty is not required. In fact, where a controlled substance is involved, laboratory analysis ordinarily would be necessary for definitive identification. Although a warrant must be certain as to its scope, an officer in the field necessarily must use some judgment in identifying the items described.

 The parties have not cited, and our research has not disclosed, authority expressly defining the standard of certainty by which objects must be identified, during a search, as those included in the warrant. The cases appear to have focused upon warrantless searches. In such searches, there must be probable cause to believe that the items seized are relevant to a particular crime. *Warden v. Hayden*, 387 U.S. 294, 306–07, 87 S.Ct. 1642, 1649–50, 18 L.Ed.2d 782 (1967). In view of the constitutional preference for searches under warrant, the standard for identifying items under a warrant could not be more rigorous than the standard governing warrantless searches. Accordingly, we hold that an officer conducting a search under warrant must have probable cause to believe that the items seized are those included in the warrant. In the present case, we have held the warrant to include PCP in any form. Although the officer was not certain that the substance in the bottle was PCP, he had probable cause to believe so. We conclude that seizure of the bottle and its contents was justified.

### III

 Finally, O'Campo argues that a motion for judgment of acquittal should have been granted because the State failed to prove "intent to deliver" the controlled substance. This motion was made, at the close of the State's case, under Rule 29(a) of the Idaho Criminal Rules. The rule provides that such a motion shall be granted "if the evidence is insufficient to sustain a conviction . . . ." However, the jury must be accorded the right to draw all reasonable inferences from the evidence presented. *State v. Erwin*, 98 Idaho 736, 572 P.2d 170 (1977). When a motion for judgment of acquittal has been denied, and the defendant stands convicted, all reasonable inferences on appeal are taken in favor of the prosecution. *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968).

The state's case regarding "intent to deliver" was entirely circumstantial. There was no direct evidence presented to the jury concerning any planned delivery of a controlled substance by O'Campo. However, as noted earlier, the testimony at trial disclosed that PCP in liquid solution customarily was applied to plant material or to paper used in rolling cigarettes. The substance then would be consumed by smoking the cigarettes. A criminalist from the state forensic laboratory testified that the bottle seized at the airport contained 220 milliliters of a thirteen percent PCP solution. He equated this to 28.38 grams of pure PCP. Based upon evaluation of contraband from other cases, he further testified that typical "packets" of plant material, treated with PCP, would contain approximately 32 milligrams each of the controlled substance. The jury could infer that the PCP carried by O'Campo was sufficient to prepare more than 800 saleable "packets." There was also testimony from which the jury could infer that if the PCP were marketed as a liquid solution, some forty to seventy small vials could be sold, each having a value of $100.

The Idaho Supreme Court on three occasions has reviewed the sufficiency of circumstantial evidence, upon which a reasonable inference of "intent to deliver" might be based. In *State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973), the court held that such an inference could not be drawn from mere possession of approximately two ounc-

es of marijuana, six tablets of LSD, 38 "tabs" of an amphetamine and a minute quantity of cocaine. In *State v. Badger*, 96 Idaho 168, 525 P.2d 363 (1974), a divided court said the inference could be sustained upon evidence consisting of marijuana and hashish sufficient to roll some 1,200 cigarettes, testimony about the defendant's use of these substances, and the opinion of a qualified law enforcement officer that the quantity and packaging of the substances indicated they were being held for sale. Most recently, in *State v. Gomez*, 101 Idaho 802, 623 P.2d 110 (1980), the court upheld such an inference based upon expert opinion and the possession of two bags of marijuana, twelve tin foil packets of eight to fourteen percent heroin, a bag containing fifteen grams of seventeen percent heroin, a "fix kit" and a weighing scale.

The Idaho trilogy does not establish general guidelines on the adequacy of circumstantial evidence. However, when these cases are considered with decisions from other states, a pattern emerges. As set forth below, our research indicates that, in addition to the quantity and variety of substances found in a defendant's possession, the courts have focused upon the following circumstantial factors: (1) suspicious activities by a defendant, or the existence of money and transaction records, indicating delivery of controlled substances; (2) the defendant's personal habits regarding use of the substances in question; (3) the economic value of the substances, if sold; (4) expert testimony concerning typical patterns of use and sale; (5) the existence of paraphernalia customarily used to process controlled substances for delivery; and (6) the existence of packages or containers customarily used in delivery.

 Evidence of the quantity and variety of substances found will not, by itself, support an inference of intent to deliver. *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1969); *Redden v. State*, 281 A.2d 490 (Del.1971); *State v. O'Mealey, supra; State v. Smith*, 4 Kan.App.2d 149, 603 P.2d 638 (1979). One or more of the factors listed above must be

proven; and the evidence, taken as a whole, must establish a substantial, rather than speculative, basis to draw such an inference. *Cf. State v. Liles*, 11 Wash.App. 166, 521 P.2d 973 (1974).

The last factor mentioned above—packages or containers—is much discussed in the cases, but appears insufficient to support an inference of intent to deliver, unless it is coupled with another factor. Thus, where the quantity and economic value of substances suggest personal use, the mere existence of packaging material will not provide an adequate basis to infer an intent to deliver. The packaging may be consistent with the defendant's purchase of the substances for personal use. *E.g., United States v. Payton*, 672 F.2d 209 (D.C.Cir. 1982); *Stuebgen v. State*, 548 P.2d 870 (Wyo.1976).

 However, the other factors will support an inference of intent to deliver. Where the quantities and values of the substances in question are substantial, and the packaging material is coupled with paraphernalia, there is an adequate basis to infer an intent to deliver. *E.g., United States v. Davis*, 562 F.2d 681 (D.C.Cir.1977); *Daygee v. State*, 514 P.2d 1159 (Alaska 1973). Moreover, the existence of paraphernalia, even without packaging material, may be sufficient to support an inference. *E.g., People v. Gomez*, 632 P.2d 586 (Colo. 1981); *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978). Similarly, where substantial quantities and values are combined with evidence of suspicious activities, money, or transaction records, the inference may be sustained. *E.g., United States v. Staten*, 581 F.2d 878 (D.C.Cir.1978); *United States v. Reese*, 561 F.2d 894 (D.C.Cir.1977); *People v. Del Alamo*, 624 P.2d 1304 (Colo. 1981); *State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (1974).

 The jury may also draw such an inference when the quantity of the substance seized can be weighed directly against the defendant's own use habits. *State v. Badger, supra.* Finally, the inference is permissible where the quantity and value of the substance can be compared to

typical patterns of use or sale through the use of expert testimony. *State v. Gomez, supra.* When such a comparison can be made, the absence of other factors, such as packaging or paraphernalia, will not prevent the inference from being drawn. *E.g., People v. Newman,* 5 Cal.3d 48, 95 Cal.Rptr. 12, 484 P.2d 1356 (1971), *overruled on other grounds, People v. Daniels,* 14 Cal.3d 857, 122 Cal.Rptr. 872, 537 P.2d 1232, 1236 (1975); *Woodward v. State,* 567 P.2d 512 (Okla.Cr.App.1977).

We believe the instant case falls into this final category. The expert testimony here showed that O'Campo had in his possession a sufficient quantity of PCP either to prepare more than 800 ordinary "packets" of solid material, or to distribute some forty to seventy vials of liquid PCP solution having a total value between $4,000 and $7,000. In our view, this evidence afforded a substantial basis for the jury to infer an intent to deliver. We hold that the district court correctly denied O'Campo's motion for judgment of acquittal.

The judgment of conviction is affirmed.

WALTERS, C. J., and SWANSTROM, J., concur.