702 P.2d 897

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Charles CARLSON,
Defendant-Appellant.**

No. 15228.

Court of Appeals of Idaho.

July 1, 1985.

Alan E. Trimming, Thomas J. Ryan, Ada County Public Defender's Office, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

A jury found Charles Carlson guilty of robbery. He was sentenced to the custody of the Board of Correction for an indeterminate ten-year term, together with a consecutive five-year term under I.C. § 19–2520, for use of a firearm during the robbery. The sole issue on appeal is whether the district court erred in admitting testimony that Carlson, a month before the robbery, made statements indicating his involvement in an aborted attempt to commit a robbery at that time. We affirm the judgment of conviction.

Carlson was convicted of robbing a grocery store early one evening in Boise. The testimony of the store employees related that a man and a woman entered the store and appeared to be shopping. After a period of time the man displayed a sawed-off shotgun and joined the woman, who was also armed, at the front of the store. The woman informed the employees that "this

is a robbery." The man and woman took money from the cash registers and a deposit bag containing the day's receipts and left the store.

Before trial, Carlson filed a motion in limine to exclude the testimony of his former roommate. The court denied the motion. The roommate, the first witness called by the state, testified to a conversation which took place in his presence between Carlson and a woman, who later pled guilty to the robbery charge. The conversation occurred about a month prior to the robbery. The roommate testified that Carlson, while wearing a scarf over his face and in possession of a sawed-off shotgun, stated that he and the woman had "borrowed a car to use in a job." The roommate's testimony made it clear that "job" meant a crime, presumably a robbery that was aborted when Carlson and his woman companion lost their nerve. On appeal, Carlson argues this testimony was irrelevant and thus improperly admitted.

■ It must first be determined whether a proper objection was made during the trial to the testimony of the former roommate. Generally, an appellate court will not consider an alleged error on appeal in the absence of a timely objection to the evidence at trial. *State v. Sharp*, 101 Idaho 498, 616 P.2d 1034 (1980). Immediately following the roommate's testimony concerning Carlson's statement about borrowing a car for a job, defense counsel objected on the basis that the answer was unresponsive to the question asked. Therefore, at first glance it would appear that a relevancy objection was not raised. However, prior to this exchange defense counsel had entered a foundational objection to the roommate's testimony. The district court in ruling on the objection phrased it in terms of relevancy. The district court allowed the roommate's testimony to continue on the condition that its relevancy would be established later in the trial. Therefore, the initial thrust of defense counsel's objection was relevancy. After a careful review of the record dealing with the introduction of this testimony of the roommate, we find

that the issue of relevancy was sufficiently raised for purposes of appellate review.

■ Evidence of other bad acts may be admitted if relevant to a material issue concerning the offense charged. Whether evidence of other bad acts should be admitted involves a two-tiered analysis. *State v. Matthews*, 108 Idaho 482, 700 P.2d 104 (Ct. App.1985). The first inquiry is whether the evidence is relevant to a material and disputed issue concerning the crime charged. *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982). The second inquiry involves a determination of whether the probative value of the evidence is outweighed by the unfair prejudice to the defendant. *State v. Stoddard*, 105 Idaho 533, 670 P.2d 1318 (Ct.App.1983). If the evidence is not relevant, then the second tier need not be evaluated. This balancing decision is within the discretion of the trial judge and will not be overturned on appeal unless discretion has been abused.

■ We note that the trial judge allowed this evidence to come in about Carlson's statements and conduct before the state had put on any evidence to establish that the crime of robbery had been committed. This is a matter of discretion that lies with the trial court and in absence of an abuse of that discretion no reversible error is shown. *See, e.g. State v. Fedder*, 76 Idaho 535, 285 P.2d 802 (1955). Nevertheless, we do not approve of this procedure where proof of other crimes is involved.

A trial judge who has heard no evidence about the crime itself is hardly in a position to determine the relevancy of and the need for the "other crimes" evidence. The judge can only accept the prosecutor's statements as to what the state intends to prove as a foundation for this risky and prejudicial evidence. Prematurely admitting this evidence is an added risk which ordinarily should not be taken absent a showing by the state of a compelling need to depart from a procedure that is less apt to cause an unfair trial.

Even if the trial judge can initially determine the evidence will be relevant for some

permissible purpose, such as showing intent or identity, the judge is in a poor position to weigh the relevancy and the need for such evidence against the possible prejudicial impact of it. Perhaps that is why the judge in this case made no mention of the required weighing process.

We have noted recently that it is difficult for an appellate court to review a trial judge's decision if the record does not contain a discussion concerning the relevancy or the weighing process. *State v. Stedtfeld,* 108 Idaho 695, 701 P.2d 315 (Ct. App.1985). We have encouraged judges to articulate their reasons for admitting evidence under the two-tiered analysis. The trial judge in the present case failed to do this. Accordingly, we must examine the record independently, without the benefit of the trial judge's reasoning.

We now turn to the substantive issue of whether the testimony was properly admitted. Carlson asserts that the testimony regarding borrowing a car to do a job is evidence of other criminal activity and is not admissible to prove a specific offense merely by illustrating a criminal propensity of the accused. *See State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979). The state contends that the objectionable testimony does not in fact describe a prior bad act or crime. The "job" was not defined by Carlson during the conversation. Carlson admits that this testimony did not directly link him to any specific crime. The roommate could provide no explanation as to what constituted a "job" beyond describing the surrounding circumstances of the conversation. Nevertheless, to the roommate the word "job" connoted a "crime." This impression was conveyed to the jury.

Evidence of other prior bad acts may be admitted if it tends to identify the defendant as the participant in the crime charged or shows a common scheme or plan embracing commission of two or more crimes so related to each other that proof of one tends to establish the other, as well as other relevant issues. *See generally State v. Wrenn,* 99 Idaho 506, 584 P.2d 1231 (1978). Carlson argues that the only allow-able purpose for the roommate's testimony would be to prove a common scheme or plan embracing the commission of two or more crimes. He correctly argues that such purpose is not applicable here. The state contends the testimony was relevant to the issue of identity.

The significant portions of the former roommate's testimony included the observation that Carlson, wearing a scarf over his face and in the possession of a sawed-off shotgun, stated that he and the woman had borrowed a car to do a job. The roommate further testified that Carlson wore a heavy green jacket with the word "Marines" written across the back. The eyewitnesses to the robbery testified that the male robber carried a sawed-off shotgun and wore a heavy green jacket with some form of writing on the back of the jacket signifying the Marines. Therefore, the testimony of the former roommate was relevant to establish the identity of Carlson as one of the robbers. The evidence also showed that Carlson had access to a weapon similar to the one used in the robbery. The testimony that Carlson stated he and the woman borrowed a car to do a job is relevant to show that he and the woman were acting in concert with a plan and with the intent to commit a robbery. We conclude that the evidence was relevant to the issue of identity. *E.g. State v. McCormick,* 100 Idaho 111, 594 P.2d 149 (1979).

The identity of the man who robbed the store was the principal issue in the case. The manager of the store testified with certainty that Carlson was the robber. Two other employees were fairly certain Carlson was the one. The remaining three employees present at the time of the robbery were not able to positively identify Carlson as the male robber. The woman we mentioned earlier, who had pled guilty to the robbery, was called as a witness by Carlson. She testified that Carlson was not her partner in this robbery. After some reluctance to name her partner, she gave the name of a man she said lived in California. Therefore, evidence tending to establish the identity of the male robber

was relevant to a disputed and material issue in the case.

Next we turn to weighing the probative value of the evidence linking Carlson to the commission of the robbery against the danger of unfair prejudice. Carlson asserts that the probative value of the offered testimony did not outweigh the prejudicial effect of the testimony. In support of this argument, Carlson claims that the probative value was diminished because the former roommate was unable to accurately pinpoint dates, times, and descriptions. The witness could only say the conversation occurred one or two weeks before Thanksgiving. Although the exact time was uncertain, it is clear that the conversation occurred about a month before the robbery charged in this case. The conversation was not too remote or uncertain to be considered. It was the jury's province to consider elements of uncertainty or remoteness in weighing the evidence. *State v. Perez*, 99 Idaho 181, 579 P.2d 127 (1978).

We believe that the prejudicial effect of relating Carlson's conversation was in showing what way he was associated with the woman later identified by the state's witness as the one who participated in the robbery. The evidence—through the related conversation—suggested that Carlson and the woman had planned, but had aborted, a earlier robbery. The evidence was relevant. The roommate testified—without objection—to other circumstances surrounding the conversation which also were indicative that Carlson and the woman had been planning some criminal activity. He testified to weapons being displayed by the couple. Again, no objection was made to this testimony. That Carlson was in possession of a sawed-off shotgun, similar to the one used in the robbery a month later, was relevant but certainly was also prejudicial. Under these circumstances, the statement attributed to Carlson at the time had little added prejudicial effect.

We conclude that the probative value was not overcome by unfair prejudice. We sustain the trial judge's decision to admit the testimony of Carlson's roommate.

The judgment of conviction is affirmed.

WALTERS, C.J., and BURNETT, J., concur.