735 P.2d 1089

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Paul GARZA, Defendant-Appellant.**

No. 15774.

Court of Appeals of Idaho.

April 7, 1987.

Petition for Review Denied July 22, 1987.

William J. Tway of Tway and Tway, Boise for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Following a search of his residence and seizure of certain evidence, Paul Garza was arrested and charged with possession of more than three ounces of marijuana, I.C. § 37–2732(e), and with possession with intent to deliver, I.C. § 37–2732(a)(1)(B). He appeals from the judgment entered on the jury's findings of guilt, raising several evidentiary and jurisdictional arguments. He contends that (1) Idaho Criminal Rule 41(b) unconstitutionally expands statutory limits upon the scope of search warrants, resulting in an over-broad warrant in this case; (2) the affidavit for the search warrant lacked probable cause, mandating suppression of the evidence seized; (3) the testimony concerning crimes committed by third parties in Nevada was erroneously admitted; and (4) the state failed to prove beyond a reasonable doubt either Paul's possession of the marijuana or his intent to deliver it to third parties. We affirm the final judgment below.

Acting pursuant to a search warrant, several police officers conducted a search of the home of Paul and Brenda Garza in the couple's absence. The search revealed the following evidence: (1) a brown suitcase containing seven plastic bags and one cellophane bag of marijuana ranging in weight from 392 to 471 grams located under the bed of an upstairs room; (2) a blue suitcase containing a "Seal-a-Meal" (a device for heat-sealing plastic bags) located under the bed next to the brown suitcase; (3) a set of scales in plain view on a sewing machine cabinet in the room with the suitcases; (4) a brown paper sack of marijuana stems wrapped in newspaper located on the floor between a chest of drawers and a baby crib in the master bedroom; (5) a large plastic bag of marijuana seeds on an upper shelf in the closet of the master bedroom; (6) a brown paper sack containing three individual zip-lock freezer bags of marijuana located in a closet on the first floor; and (7) two notebooks and numerous Western Union Money–Gram receipts and house payment receipts in a bank bag in the room with the suitcases. Paul and his wife, Brenda, were later arrested and each was charged with possession of more than three ounces of marijuana and with possession with intent to deliver. The two were given separate jury trials.[1]

Several of the Money-Gram receipts were introduced at Paul's trial, many made out to Paulo Ramirez for large sums. Testimony of a Las Vegas police officer outlined the arrest of Ramirez in Nevada for the sale of thirty-seven pounds of marijuana to an undercover police officer. Additional evidence indicated extensive telephone contact between the Garzas' telephone number and that of Gilbert Andrini in Las Vegas. Further testimony established Andrini's connection with cocaine trafficking, and indicated drug dealings between Andrini and Ramirez. Following a two-day trial, the jury found Paul guilty on both counts charged. The judge dismissed the conviction for possession of more than three ounces of marijuana and sentenced Paul to five years probation plus a term of community service and a $7,000 fine for the conviction of possession with intent to deliver.[2]

I

First, Paul contends that the magistrate was without jurisdiction to issue a search warrant for seizure of "mere evidence" of

---

1. Brenda's trial was conducted first. She was found guilty of the same crimes for which Paul was convicted. *See State v. Garza*, 112 Idaho 776, 735 P.2d 1087 (Ct.App.1987).

2. The district court held that the same acts on the part of the defendant were the basis for the conviction of each crime. The court concluded that Idaho's "double jeopardy" statute, I.C. § 18–301, prohibited conviction and punishment for both counts. The court therefore agreed to vacate the conviction on the first count if no timely appeal was taken from the conviction for possession with intent to deliver. If an appeal was taken, the conviction on the first count would be vacated only if the conviction on the second count were affirmed on appeal.

a crime. He argues that Idaho Criminal Rule 41(b) allowing for the seizure of mere evidence impermissibly expands the statutorily restricted basis for issuance of a search warrant. The statute, I.C. 19–4402, essentially has not been changed since its adoption as Idaho territorial law in 1864. It provides that a search warrant

> may be issued upon either of the following grounds:
>
> 1. When the property was stolen or embezzled....
>
> 2. When it was used as the means of committing a felony....
>
> 3. When it is in the possession of any person with the intent to use it as the means of committing a public offense....

In January, 1984, when the search warrant was issued, I.C.R. 41, as it was then promulgated by our Supreme Court, stated in part

> (b) Property which may be seized with a warrant. A warrant may be issued under this rule to search for and seize (1) evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed.

Paul argues that § 19–4402, by setting narrower guidelines, is intended to afford more protection against searches than the constitution. He contends this greater protection is a substantive right. Accordingly, he argues that the Idaho Supreme Court cannot, by rule, amend the statute so as to broaden the scope of a search warrant. To do so is an unconstitutional invasion of legislative domain. Therefore, so far as I.C.R. 41(b) allows for search and seizure of "mere evidence," it is unconstitutional. We disagree.

The statute is an anachronism carved from the common law of England. At one time the statute did truly reflect the constitutional scope of a search warrant. *See, e.g., Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). That is no longer true. Since the era of this statute an evolution in the law of search and seizure has occurred "through a subtle interplay of substantive and procedural reform." *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1649, 18 L.Ed.2d 782 (1967). In *Hayden*, the so-called "mere evidence rule"—actually a limitation prohibiting the government from searching for and seizing mere evidence of a crime—was historically reviewed and repudiated by the Supreme Court. The Supreme Court stated:

> The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for "mere evidence" or for fruits, instrumentalities or contraband [of a crime].... Thus in the case of "mere evidence," probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.

*Id.* at 306–07, 87 S.Ct. at 1650. The majority of state courts have followed the Supreme Court's rejection of the "mere evidence" rule, placing great emphasis on the above-quoted language when allowing for seizure of evidence of a crime. 1 W.E. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 2.4 (2d ed. 1986). *E.g., State v. Mata*, 125 Ariz. 233, 609 P.2d 48, *cert. denied, Mata v. Arizona*, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980); *People v. Franklin*, 640 P.2d 226 (Colo.1982); *State v. Paul*, 80 N.M. 521, 458 P.2d 596 (Ct.App.1969), *cert. denied, New Mexico v. Paul*, 397 U.S. 1044, 90 S.Ct. 1354, 25 L.Ed.2d 654 (1970).

Shortly after the *Hayden* decision, our own Supreme Court voiced its support for the admission of mere evidence at trial. In *State v. Gonzales*, 92 Idaho 152, 438 P.2d 897 (1968), the Idaho Supreme Court determined that mere evidence was equally as admissible at trial as an instrumentality of a crime so long as the evidence was discovered as a result of a lawful search, indicating the propriety of the seizure of mere evidence pursuant to a lawful search. The two searches in *Gonzales* were made without a warrant, one pursuant to a lawful arrest and one with consent. The search

pursuant to the arrest produced "mere evidence," a cartridge case, linking Gonzales to the weapon found in the other search. Idaho Code § 19–4402 was not implicated in *Gonzales*. Nevertheless, as to warrantless searches, our Supreme Court made it clear, by reference to *Hayden*, that the scope of such searches may be broader than indicated by the statute.

The federal rules prior to *Hayden* contained language paralleling I.C. § 19–4402. Subsequent to *Hayden*, Federal Rule 41(b) was amended to reflect the Supreme Court's change of position. Idaho's Rule 41(b) mirrors the current federal rule, underscoring the shifting attitude away from the mere evidence rule and dictating the treatment afforded the question of mere evidence in the majority of jurisdictions.

■ Three Idaho cases have dwelt on conflicts between Rule 41 and older, more restrictive statutory provisions. *State v. Yoder*, 96 Idaho 651, 534 P.2d 771 (1975) (upholding provisions of I.C.R. 41(c) allowing oral recorded testimony for issuance of search warrant even though I.C. § 19–4404 mandated "depositions in writing"); *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979) (holding that less restrictive provisions of I.C.R. 41(c) for issuing nighttime search warrants controlled over more restrictive provisions of I.C. § 19–4411); *State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984) (adhering to *Lindner*'s ruling "that I.C.R. 41 would control to the exclusion of I.C. § 19–4411"). In each case, Rule 41 was held to be fully operative while the inconsistent statute was found to be void of further force and effect. In essence, our Supreme Court has held that its rule making authority will predominate over such a statutory provision unless the provision in question embodies a constitutional right. Section 19–4402 contains no mandatory restrictive language as does § 19–4411. Neither the federal nor the state constitution requires a narrow adherence to the limits suggested by § 19–4402. Our Supreme Court has already held that warrantless searches may be conducted for "mere evidence" of the commission of a crime. In view of the decisions in *Gon-*

*zales, Yoder, Lindner* and *Lewis*, we believe that the provisions of I.C.R. 41(b) must be held to at least supplement the statutory provisions, if not replace them entirely. Accordingly, we hold that Rule 41(b) was properly invoked, and the magistrate had authority under the rule to issue a warrant for seizure of evidence of the commission of a crime.

## II

Second, Paul argues that the affidavit for the search warrant failed to disclose probable cause for issuance of the warrant. To the contrary, we find that the affidavit sets forth several events amounting to probable cause. Officer Dennis Dexter, the affiant, instigated an investigation of a number of individuals in response to information he received from Officer Traverse of the Las Vegas Metropolitan Police Department concerning the possible delivery of a controlled substance to the Garza residence in Idaho. The Las Vegas police, using a pen register, verified that frequent long distance telephone calls occurred between the Garza residence and an individual in Las Vegas known to be involved in the sale and distribution of controlled substances. This information was further verified by a confidential informant to the Las Vegas police who claimed to have overheard various conversations between the Las Vegas individual and a person at the Garza residence.

A short time later, Officer Traverse relayed additional information to Officer Dexter from the informant concerning the delivery of ten to fifteen pounds of marijuana to the Garza home from Las Vegas. This information was also derived from an overheard conversation. The same day, an officer of the Rupert Police Department observed numerous vehicles arrive at the Garza home, noting the short duration of each stop. Officer Dexter attested to the consistency of this activity with the distribution of controlled substances. Two days later, Officer Dexter was notified that the Garzas were having difficulty distributing the shipment, indicating that marijuana would possibly be found on the premises.

From the affidavit it reasonably can be inferred that this information also originated from the Nevada informant as a result of an overheard conversation.

■ The determination of the existence of probable cause must represent the exercise of a magistrate's sound discretion. Our function, on appeal, is limited to ensuring that the magistrate had a substantial basis for concluding that probable cause existed. *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). While we are no longer bound by the rigid requirements of the *Aguillar-Spinelli* test in determining whether the magistrate abused that discretion, the "veracity" and "basis of knowledge" prongs of that test provide a useful starting point under the current "totality of the circumstances" analysis. *State v. Schaffer,* 107 Idaho 812, 693 P.2d 458 (Ct. App.1984). The informant provided three separate tips. His knowledge for each was based ostensibly on overheard conversations. No further details are provided. On the other hand a strong showing was made as to the informant's veracity. The Las Vegas police attested to the informant's veracity based on previous dealings with the informant and their verification of his information in those instances. In addition, the pen register corroborated the existence of the telephone calls. Furthermore, the police observation at the Garza home after receiving notice of the delivery offers support for the informant's credibility. Based on the information and circumstances set forth in the affidavit, the magistrate could reasonably have found that the evidence sought was probably connected with criminal activity and that the evidence could be located at the Garza home. *State v. Turnbeaugh,* 110 Idaho 11, 713 P.2d 447 (Ct.App.1985). Hence, we hold that under the totality of the circumstances probable cause was shown for the issuance of the search warrant. The magistrate did not abuse his discretion.

## III

Next, Paul contends that the trial court erred in admitting testimony concerning the illegal activities of third parties not charged in this case. Idaho law has long barred the admission of evidence concerning the unrelated criminal activities of the accused when offered to show that he is a bad person and that he therefore committed the crime for which he is on trial. *See State v. Wrenn,* 99 Idaho 506, 584 P.2d 1231 (1978); I.R.E. 404(b). Similarly, evidence that the defendant associates with individuals who engage in criminal activity is not admissible to demonstrate that the defendant has a bad character and, therefore, is likely to have committed the charged offense. *See People v. Roland,* 40 A.D.2d 1007, 338 N.Y.S.2d 767 (1972).

■ However, evidence of uncharged criminal activity—either of the accused, or, as in this case, of a nondefendant—may be admissible for other purposes. *See Commonwealth v. Szemetum,* 3 Mass.App. 651, 338 N.E.2d 850 (1975) (evidence that defendant had knowledge of third party's drug dealings admissible where defendant claimed to be unaware of contents of package containing heroin which was given to her by third party); I.R.E. 404(b). *Cf. Harrison v. State,* 276 Md. 122, 345 A.2d 830 (1975) (evidence that third party dealt marijuana not admissible because not relevant to intent).[3] We emphasize that the evidence, to be admissible, must be relevant to a material, disputed issue in the case. *See State v. Lawrence,* 112 Idaho 149, 730 P.2d 1069 (Ct.App.1986) (evidence excluded where intent not genuinely at issue); *State v. Roach,* 109 Idaho 973, 712 P.2d 674 (Ct.App.1985). Furthermore, the evidence must be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. I.R.E. 403; *State v. Boothe,* 103 Idaho 187, 646 P.2d 429 (Ct.App.1982) (concurring opinion). In a case where evidence is admissible for one purpose, but inadmissible for another, the danger of un-

---

3. Of course, third party criminal activity cannot be proved by hearsay testimony. *See Kirby v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899); *Wike v. State,* 623 P.2d 356 (Alaska Ct.App.1981). The testimony in this case was based upon the firsthand knowledge of the witness.

fair prejudice lies in the risk that the jury will use the evidence for the improper purpose.

In this case, intent was a material and disputed issue. As stated above, a search of the Garza residence revealed significant quantities of marijuana. Paul's defense at trial was that he had no knowledge of the marijuana. As indicated in our discussion below, regarding the sufficiency of the evidence, proximity alone will not suffice as proof of possession. Here, evidence that Paul personally had sent substantial sums of money to an individual shown to be engaged in the large-scale trafficking of marijuana was plainly relevant to show his knowledge of and intent to possess the marijuana found in the residence which he cohabited with his wife.

■ Because the evidence was relevant to a material and disputed issue, it was admissible unless excluded under the probative value/unfair prejudice balancing test. The judge did not explicitly perform such a test on the record. Under these circumstances, we must examine the record independently, without the benefit of the trial judge's reasoning. *State v. Carlson*, 108 Idaho 859, 702 P.2d 897 (Ct.App.1985). The danger of unfair prejudice presented by the evidence in question was the risk that a jury could conclude that because the defendant associated with criminals, he was a bad person and was more likely to have committed the charged offense. However, Paul's defense, in essence, was that his wife possessed the marijuana. The jury, if inclined to infer guilt by association, could have done so based upon this relationship. The evidence that Paul transacted business with other persons engaged in drug dealings raised little potential for prejudice beyond that inherently raised by his own defense. On the other hand, the probative value of the evidence to show intent and knowledge was great. We conclude that the probative value of the evidence substantially outweighed the attendant danger of unfair prejudice. Accordingly, the trial judge did not err in admitting the evidence.

## IV

Finally, Paul challenges both convictions based on the sufficiency of the state's evidence. He argues that the state failed to prove beyond a reasonable doubt that Paul had either possession of the marijuana or intent to distribute it. A conviction based upon a jury verdict will be set aside only absent substantial competent evidence upon which a rational trier of fact could find beyond a reasonable doubt the necessary elements of the crime charged. *State v. Vinton*, 110 Idaho 832, 718 P.2d 1270 (Ct.App.1986). Because we are "precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence[,]" we view the evidence in a light most favorable to the state. *Id.* at 833, 718 P.2d at 1271 (quoting *State v. Campbell*, 104 Idaho 705, 718–19, 662 P.2d 1149, 1162–63 (Ct.App.1983)).

■ An essential element of both crimes was possession of the marijuana. Possession may be either actual or constructive, *State v. Warden*, 97 Idaho 752, 554 P.2d 684 (1976), and may be proved by circumstantial evidence. *State v. Vinton, supra.* Constructive possession is generally established by proof that a defendant had knowledge of the substance and possessed dominion and control over it. *State v. Clayton*, 101 Idaho 15, 607 P.2d 1069 (1980); *State v. Warden, supra.* In other words, constructive possession exists where a nexus between the accused and the controlled substance is sufficiently proven so as to give rise to the reasonable inference that the accused was not simply a bystander but, rather, had the power and the intent to exercise dominion or control over the marijuana. *U.S. v. Rackley*, 742 F.2d 1266 (11th Cir.1984); *U.S. v. Cardenas*, 748 F.2d 1015 (5th Cir.1984); *Smith v. State*, 698 P.2d 482 (Okla.Cr.App.1985); *State v. Fox*, 709 P.2d 316 (Utah 1985). Where joint occupancy is involved, substantial evidence must exist establishing the guilt of each defendant, not merely the collective guilt of both. *State v. Vinton, supra.* Proximity alone will not suffice as proof of

possession. Paul did not have exclusive possession over the premises upon which the evidence was found. However, his non-exclusive control of the property, combined with his knowledge of the marijuana and the evidence adduced at trial, provides a sufficient nexus upon which to uphold his convictions. The marijuana and paraphernalia were dispersed throughout the house in common areas to which Paul and Brenda had individual access. Marijuana stems and seeds were located in the master bedroom, a room likely to be used frequently by Paul. Testimony established that the notebooks seized from the Garza home contained certain records of drug transactions. Both Paul and Brenda periodically sent large sums of money to individuals known to deal in marijuana who were linked at trial with entries in the notebooks.[4] Paul himself sent more than $5,400 during the four weeks preceding the police search of his home. From this evidence, a jury reasonably could have rejected Paul's claim of being an innocent bystander and found instead that he had both the power and the intent to exercise control over the marijuana.

Furthermore, there was substantial evidence that Paul intended to distribute the marijuana. Nine pounds of marijuana, packaged largely in one-pound baggies, were seized from the Garza home. The record supports the inference of a street price of between $5,000 and $8,000 and reflects sufficient testimony from which the jury could infer that the amount was greater than is normally possessed for personal use. Paraphernalia and packaging materials were also seized along with notebooks identified as transactional records indicating the sale of a controlled substance. On the basis of this evidence and the trial testimony, a rational jury could find beyond a reasonable doubt that Paul Garza intended to distribute some or all of the marijuana. *State v. O'Campo*, 103 Idaho 62, 644 P.2d 985 (Ct.App.1982). This finding would support the verdict reached below. Consequently we hold that the evidence sustains a conviction on both charges.

The judgment below is affirmed.

WALTERS, C.J., concurs.

BURNETT, Judge, specially concurring.

In Part I of today's opinion, the Court discusses a perceived conflict between legislative and judicial definitions of the types of property that may be seized under search warrants. The Court nullifies the legislative standard by a three-step reasoning process: (1) I.C. § 19–4402 prohibits the seizure of "mere evidence;" (2) Rule 41(b), I.C.R., authorizes the seizure of such evidence; and (3) Rule 41(b) will be given dominant effect because it expresses modern judicial thought and our Supreme Court has held in several cases that rules prevail over statutes. I think the analysis can be stated in an alternative way that accords greater recognition to the proper role of the legislature.

Our system of government is said to embody a separation of powers. Actually, it is more accurate to say that the three branches of government—legislative, executive and judicial—have areas of exclusive and shared authority. Thus, the legislature has exclusive authority, subject to constitutional restrictions, to determine the internal processes by which it will formulate and consider proposed statutes or resolutions. Similarly, the judiciary has exclusive authority, within constitutional constraints, to determine the internal processes by which it will perform fact-finding and law-stating functions of adjudication. These areas of exclusive responsibility often are characterized as "procedure." On the other hand, the legislature and judiciary share authority to define the rights and duties of private persons vis-a-vis each other or of government vis-a-vis individuals. On such issues, court rules or decisions may coexist with statutes so long as they do not conflict. When there is a conflict, the judiciary defers to the legislature

---

**4.** The evidence that Brenda had sent some of the Money-Grams to Las Vegas was excluded in her trial because of a lack of proper foundation.

In Paul's case a witness from Las Vegas supplied the necessary foundation.

unless the issue is governed by the state or federal constitution. In that event the judiciary's constitutional interpretation will prevail. This area of shared responsibility often is characterized as "substantive law."

Within this framework, the Idaho Supreme Court decisions cited in today's decision can be analyzed. In *State v. Yoder*, 96 Idaho 651, 534 P.2d 771 (1975), the Court held that a rule allowing oral testimony in support of applications for search warrants would prevail over a conflicting statute that required "depositions in writing." *Yoder* can be explained as an assertion by the judiciary of its exclusive authority to determine the internal process by which it will perform a fact-finding function. Just as the judiciary would not presume to say whether legislative committees must receive testimony orally or in writing, the legislature should not presume to tell the judiciary what form of evidence it may, or may not, consider. That is for the judiciary itself to determine.

However, the other cases cited—*State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984) and *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979)—are not so easily explained. In each of those cases, the issue was under what circumstances law enforcement officers might enter private property to conduct nighttime searches. This issue does not fall within the exclusive authority of the legislature or of the judiciary. Rather, it is embraced by their shared authority to define the rights and duties of government vis-a-vis individuals. Either the legislature or the judiciary may address such an issue, so long as its pronouncements are consistent with the state and federal constitutions.

That is precisely what the legislature and the judiciary have done. Nighttime searches are not differentiated from daytime searches in constitutional law. However, there is no constitutional impediment to providing greater protection of privacy and tranquility against nighttime intrusions. The legislature has provided, in I.C. § 19–4411, that search warrants may not be executed at night unless affidavits in the warrant applications "are positive that

the property is on the person or in the place to be searched...." In contrast, I.C.R. 41(c) is less protective, allowing search warrants to be executed at night "for reasonable cause shown...." Notwithstanding the greater protection afforded by the statute, and the greater particularity of the statutory language, our Supreme Court held in *Lindner* and in *Lewis* that the rule would prevail over the statute. In so holding, the Supreme Court rejected a suggestion by the Court of Appeals that the apparent conflict between the statute and the rule could be reconciled by construing them as complementary to each other. *See State v. Lewis*, 106 Idaho 800, 683 P.2d 448 (Ct. App.1984) (overruled by the Supreme Court's decision, *supra*); *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983).

The message of *Lewis* and *Lindner*, as applied to the instant case, is that when a statute and rule conflict, dominant effect will be accorded to the rule even though the issue falls within an area of responsibility shared by the legislature and judiciary. *Lewis* and *Lindner* represent a departure from the principle of judicial deference to the legislature on nonconstitutional issues within the sphere of shared authority.

The issue here, as in *Lewis* and *Lindner*, involves shared authority. The issue is what kind of property law enforcement officers may take under warrant from private citizens. The statute, I.C. § 19–4402, empowers officers to take property "stolen or embezzled," property "used as the means of committing a felony," and property "in the possession of any person with the intent to use it as the means of committing a public offense...." The rule, I.C.R. 41(b), also lists "evidence of the commission of a criminal offense...." Neither the statute nor the rule contravenes the state and federal constitutions. The rule coincides with modern constitutional law; the statute seemingly provides greater protection against takings of tangible property.

Where an issue involves shared authority, every reasonable effort should be made to reconcile apparently conflicting pronouncements of two branches of govern-

ment. Here, the literal language of I.C. § 19–4402 does not necessarily conflict with Rule 41(b). The statute is couched in permissive terms. It lists several types of property for which warrants "may" be issued. Whether the list is illustrative or exhaustive depends upon the underlying legislative intent. As today's opinion indicates, the territorial legislature, when enacting the precursor to the present statute, apparently endeavored to codify existing constitutional case law regarding searches and seizures. Such legislative intent would not be frustrated by construing the statutory list as illustrative, allowing supplementation later with additional types of property that may be seized under evolving constitutional case law.

This reconciliation approach yields the same result in the present case as does the judicial preemption approach derived from *Lewis* and *Lindner*. But the analytical method is more sensitive to the institutional concerns of the legislature on issues of shared responsibility. Accordingly, I concur in the result reached by Part I of today's opinion. I concur fully in the remainder of the opinion.