**Clark BAMBROUGH, Plaintiff and Appellant,**

v.

**Ray BETHERS, dba Ray Bethers Trucking, and Danny Shimizu, Defendants and Respondents.**

**No. 14320.**

Supreme Court of Utah.

July 1, 1976.

Richard W. Perkins of Turner & Perkins, Salt Lake City, for plaintiff-appellant.

Stephen B. Nebeker and James L. Wilde, Salt Lake City, for defendants-respondents.

ELLETT, Justice:

The plaintiff appeals from a judgment of dismissal based upon the answers of a jury made in a special verdict. The question involved on this appeal is whether the plaintiff was, or was not, an employee of Bethers at the time he sustained certain injuries; and whether he was, or was not, in the same employment with the defendants.

If the plaintiff was an employee of Bethers, or was engaged in the same employment as was Shimizu, he is entitled to and must accept workmen's compensation and cannot maintain an action against either of them for negligence in causing his injuries.[1]

On January 15, 1973, the plaintiff was in the employ of D & L Corporation as a truck driver. Mr. Bethers had a load of wood paneling on his trailer and contracted with the D & L Corporation to transfer the load onto a trailer owned by D & L and to haul the load to Denver, Colorado. The dispatcher for Mr. Bethers testified that he discussed the "trip-lease" agreement with the plaintiff, although the plaintiff testified that he did not recollect any such conversation.

The dispatcher also testified that he prepared a "trip lease" for the haul to Denver and signed the same on the day plaintiff was injured. The "trip lease" was signed by the substitute driver some time after the trip was made.[2]

When the plaintiff arrived at Mr. Bether's place of business, he was directed by the personnel there to assist in transferring the load onto the trailer he was pulling. He immediately phoned his employer's office for instructions and was told: "If that's their procedure, you do it."

1. 35-1-60, U.C.A.1953.

2. Because of injuries received, the plaintiff could not sign himself.

The plaintiff and Mr. Shimizu (an employee of Bethers) undertook the work of transferring the load from the Bether's trailer onto the one owned by D & L Corporation. Mr. Shimizu was operating a fork lift and the plaintiff was placing pieces of 2 x 4 lumber underneath the bundles being lifted onto his trailer. When the load had been transferred, Mr. Shimizu undertook to place a tarpaulin cover on top of the wood paneling. The tarpaulin did not come off the fork, and the plaintiff attempted to climb onto the fork to disengage the tarpaulin. The fork, while being operated by Mr. Shimizu, ran over the plaintiff causing such injuries as to require the amputation of his left leg.

The plaintiff claims prejudicial errors were committed by the trial court in the following particulars:

A. By receiving into evidence four documents, viz: a trip lease dated September 7, 1972; a driver's daily log bearing the same date; another driver's daily log dated the next day; and three copies of a trip lease dated January 15, 1973, the date of the injury.

B. By failing to give certain requested instructions.

C. By submitting certain propositions in the special verdict to be answered by the jury.

The plaintiff objected to the trip-lease agreement dated September 7, 1972, on the ground that it was not relevant. He denied that the signature on it was his; and there was some indication in the testimony that the signature may have been placed on the documents by personnel of the D & L Corporation because the plaintiff was lax in turning in his paperwork. The two daily logs were prepared by the plaintiff and specifically referred to an "RB lease."

■ The exhibits were received to show a course of conduct wherein the plaintiff had made other trip-lease loads for Bethers. The question of whether he had made the other trips in question was for the jury and would be relevant in showing that Bethers had contracted for trip leases with D & L Corporation on other occasions. The terms and conditions of the documents were not to be considered, and the court so instructed the jury. The exhibits were properly received as business records kept by the defendant, Bethers, in the usual course of his business per Rule 63(13), Rules of Evidence (Utah, 1971).

■ The judgment of the trial court will not be reversed unless it is shown that the discretion exercised therein has been abused. The trial court is given considerable discretion in deciding whether or not evidence submitted is relevant. Even if the evidence was erroneously admitted, that fact alone is insufficient to set aside a verdict unless it has "had a substantial influence in bringing about the verdict."[3]

■■ Considering the limited scope of the evidence as admitted, and considering the testimony of events and conversations on the day of the accident, it cannot be said that any influence the documents may have had was "substantial" enough to bring a verdict against plaintiff which was contrary to other conclusive evidence. The oral testimony of the plaintiff, himself, as to his conversations that morning with Bethers' employees and his own employer at D & L Corporation, together with his admission of having done a similar job in 1972 under a trip-lease arrangement, was sufficient for the jury to have found a reasonable inference of a trip-lease arrangement being known to plaintiff on the day he was injured.

The trial court did not abuse its descretion in receiving the contested documents into evidence, and any error which may have resulted from such admission was harmless error.

■ The plaintiff claims that the court erred in its failure to give his requested

---

3. Rule 4(b), Rules of Evidence (Utah, 1971).

Instructions 2, 3, 4, 5, 6, 7 and 8 to the jury. Instruction 2 is as follows:

Before the Defendant Ray Bethers may perform transportation in or with equipment which he does not own, the contract, lease, or other arrangement for the use of such equipment shall be:

(a) Made between the Defendant Ray Bethers and the owner of the equipment.

(b) In writing and signed by the Defendant Ray Bethers and the owner of the equipment or their regular employees or agents duly authorized to act for them in the execution of contracts, leases or other arrangements.

(c) Specify the period for which it applies, which shall not be less than thirty (30) days when the equipment is to be operated for the Defendant Ray Bethers by the owner or employee of the owner.

This instruction is erroneous in that it assumes a written contract which conforms to certain regulations as a prerequisite to establish the validity of any working relationship between the parties. However, lack of compliance with the stated requirements does not preclude a leasing arrangement under Utah law. Under existing case law, an oral contract has been found a sufficient base from which to establish an employer-employee relationship. And the Utah Code provides that a contact can be "express or implied, oral or written."[4]

Instruction 3 states:

An employee is one who is hired and paid a salary, a wage, or at a fixed rate, to perform the employer's work as directed by the employer and who is subject to a comparatively high degree of control in performing those duties.

■ Recent decisions of this Court have held that a worker can be hired and paid by a subcontractor but still be an employee of the general contractor.[5] Fur-

ther, it is the *right* to control which is determinative; the *degree* of control is not essential.[6] It would have been error to give this instruction in that it suggests the second employer must be paying the wages and exercising physical control to a high degree before the employee is considered an employee for purposes of the statute relating to workmen's compensation.

Plaintiff's requested Instructions 4 and 5 state the following:

### No. 4

The relation of employer and employee, for Workmen's Compensation purposes, cannot exist between the Defendant Ray Bethers and a loaned employee such as the Plaintiff Clark Bambrough, without the following being present:

(a) Consent on the part of Plaintiff to work for the Defendant Ray Bethers;

(b) Actual entry by the Plaintiff upon the work of and for the Defendant Ray Bethers, pursuant to a contract so to do;

(c) Power of the Defendant Ray Bethers to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

### No. 5

For Workmen's Compensation purposes, an employee cannot have an employer thrust upon him against his will or without his knowledge.

■ The Utah Workman's Compensation Act does not expressly require consent on the employee's part to establish the requisite relationship, nor is a written contract a required formality for workmen's compensation purposes under the laws of Utah.[7] *Peterson v. Fowler*[8] held that it is sufficient "if at the time of the accident,

4. *Gallegos v. Stringham*, 21 Utah 2d 139, 442 P.2d 31 (1968); 35–1–42 U.C.A.1953, 1975 Pocket Supp.

5. *Smith v. Brown*, 27 Utah 2d 155, 493 P. 2d 994 (1972).

6. *Adamson v. Okland*, 29 Utah 2d 286, 508 P.2d 805 (1973); *Parkinson v. Ind. Comm.*, 110 Utah 309, 172 P.2d 136 (1946).

7. 35–1–42(2), U.C.A.1953, 1975 Pocket Supp.

8. 27 Utah 2d 159, 493 P.2d 997 (1972).

he was engaged in the same employment." Under Utah law consent to the relationship may be implied by the conduct of the parties. The trial record indicates that Instruction 4 was "given in substance" and plaintiff's contention that the elements of consent, control, and contract were not submitted to the jury is without merit.

 Plaintiff relies on cases in other jurisdictions which are not controlling in Utah. However, it might be pointed out that a correct reading of *Fisher v. Seattle* [9] which held a mutual agreement must exist to create an employer-employee relationship also states that the employee may "by implication, consent to the transfer of his services wherein the lender surrenders and the borrower assumes the power of supervision and control." When the holding of Fisher is applied to the circumstances of the instant case, it could be found that plaintiff impliedly consented to his services being used by defendant when he undertook to do the work of defendant after talking to his employer on the phone. Further, the statement by the employer to plaintiff, "If that's their procedure, you do it," could well be construed as surrender of the right of control to defendant with plaintiff's full knowledge. Consent, whether express or implied, was not possible in the Fisher case because it involved a second employer who was not known to exist by the employee. He had no contact with anyone except the original employer at any time. When looking at *Fisher v. Seattle* in its entirety, it can be determined that it is not incompatible with the decisions of this Court.

 Instructions 6, 7 and 8 state:

### No. 6

"Control" must be authoritative direction and control, not mere suggestions as to details or necessary cooperation.

### No. 7

Control, or lack of control, of the employee, while of the greatest significance, is not conclusive.

### No. 8

The mere fact that Plaintiff's regular employer, D & L Corporation, permits some division of control does not give rise to the inference that he has surrendered control.

Again, it should be emphasized that the right to control is the paramount consideration, not the degree or actual existence of such control. Section 35–1–42(2), U.C.A. 1953 (1975 Pocket Supp.), states in part:

Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer. . . .

The explicit language above refutes the contention of Instruction 7 and the holdings of the Peterson and Okland cases contradict the wording of Instruction 6. Instruction 8 does not conform to the prior rulings of this Court wherein the parties involved had a close, continuing relationship with supervision by one company over another.[10] It has never been held by this Court that for the loaned servant doctrine to apply, the original employer must completely surrender all control over his loaned employee.

The trial court did not err in refusing to give the above instructions.

 Plaintiff claims that Propositions 1 and 2 of the Special Verdict were prejudicial to him and that Proposition 3 was

9. 62 Wash.2d 800, 384 P.2d 852 (1963).

10. *Cook v. Kiewit*, 15 Utah 2d 20, 386 P.2d 616 (1963).

immaterial. These propositions are as follows:

### No. 1

Ray Bethers Trucking Company had the right to supervise and control the activities of Clark Bambrough in relation to the loading of the trailer and the operation of the same at the time and place of the accident January 15, 1973.

### No. 2

Clark Bambrough consented to and undertook to unload and reload the plywood cargo and consented to transport the same to Denver for and on behalf of Ray Bether's Trucking Company.

### No. 3

Clark Bambrough knew, or as a reasonable truck operator should have known that the plywood cargo he was to transport to Denver was to be loaded and transported to Denver for and on behalf of Ray Bether's Trucking Company.

As noted above it is the *right* to control and not the actual control which is significant, and the transfer of control of the plaintiff could be determined by the jury and indicated by answering the propositions submitted in the Special Verdict. While Proposition No. 1 seems to require a finding on a matter of law, it is harmless since the answer to the other propositions would require the same answer by the judge.

We do not see how the submissions of the first three propositions set out above can have any influence on the jury except to require a finding of disputed facts. The evidence was such as to justify (if not require) the answers made to the propositions submitted.

Quite aside from the above discussion, the plaintiff and Mr. Shimizu were fellow employees in the work of loading the wood paneling. The case of *Peterson v. Fowler,* supra, is squarely in point. There the plaintiff was working for the general contractor on a sports complex, and it was his duty to clean any weathered or dirtied ceiling tile placed in the dome of the high ceiling. Some employees of a subcontractor were placing ceiling tile in the dome of the complex. They all were working on a scaffold suspended from some eye bolts in the dome. The scaffold fell, causing the death of Mr. Peterson. His heirs sued the subcontractor for wrongful death, and the defendant there claimed that the deceaesd was in the "same employment" with his own employees. This Court answered the question as follows:

> To be fellow servants, they must be engaged in the same line of work and labor together in such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety. They should be at the time of the injury directly operating with each other in the particular business at hand, or they must be operating so that mutual duties bring them into such co-association that they may exercise an influence upon each other to use proper caution and be so situated in their labor to some extent as to be able to supervise and watch the conduct of each other as to skill, diligence, and carefulness. When workmen are so engaged, we think they are working in the same employment.[11]

There is nothing in the trial of this case to require a reversal; and as a consequence, the judgment should be, and it is, affirmed with costs to the respondents.

CROCKETT, TUCKETT, and MAUGHAN, JJ., concur.

HENRIOD, C. J., concurs in result.

---

11. *Peterson v. Fowler,* supra, 27 Utah 2d, at p. 164, 493 P.2d, at p. 1000.