733 P.2d 781

**Howard DAVIDSON, d/b/a D & E Construction, Plaintiff-Respondent,**

v.

**BECO CORPORATION, Beco Construction Company, Inc., Doyle Beck and Elizabeth Beck, husband and wife, Defendants-Appellants.**

No. 16263.

Court of Appeals of Idaho.

Dec. 26, 1986.

Addendum Feb. 19, 1986.

Petition for Review Granted April 30, 1987.

Mark R. Fuller (Fuller & Carr), Idaho Falls, for defendants-appellants.

James D. Holman (Holden, Kidwell, Hahn & Crapo), Idaho Falls, for plaintiff-respondent.

BURNETT, Judge.

May a statement contained in a settlement offer be used to impeach a party who gives contrary testimony at trial? That is the salient issue presented in this case. In addition, we are asked to decide whether personal liability should be imposed for a corporate debt and whether attorney fees should be awarded.

These issues arise from a debt collection suit filed by Howard Davidson against Doyle Beck, Elizabeth Beck, and two corporations controlled by the Becks. Davidson alleged that he had not been fully paid for trucking services. A jury agreed, returning a verdict against all defendants. Judgment was entered accordingly. For reasons explained below, we affirm the judgment against the corporations but reverse it as to the Becks individually.

The facts are these. Davidson provided services for Beco, Inc. (later renamed Beco Construction Company, Inc.), on two construction projects. Davidson submitted bills to Beco but they were not paid. Davidson went to Beco's office. There he met with Doyle Beck, Beco's president and controlling shareholder. Davidson requested payment of $10,712 as billed. When Beck disputed the amount, a compromise was struck at $9,740. Beck gave Davidson a corporate check for $1,000. Arrangements were made for paying the balance. However, those arrangements became shrouded in controversy.

According to Beck, he and Davidson reached an accord by which Davidson would receive a tractor in lieu of any further cash payment. The tractor would be appraised and if it was worth more than the balance owed, Davidson would pay the excess to the holder of a lien on the tractor. In contrast, Davidson claims there was no such accord. He contends that he rejected the tractor proposal because he did not want to pay the tractor's excess value in order to collect a debt. According to Davidson, Beck agreed for Beco to pay the balance of the debt in cash at the rate of $1,000 per month, together with interest at fourteen percent. The upshot of the controversy is that Beco made no further cash payments and Davidson never took possession of the tractor. Davidson eventually sued Beck and Beco on the original billing.[1]

While the suit was pending, Beco's attorney sent Davidson's attorney a letter. Among other things, the letter acknowledged that Davidson had performed services for Beco. The offer of a tractor in lieu of cash was reiterated. The letter also said that "a similar offer was made [to Davidson] some time ago, but it was refused." This statement, of course, was inconsistent with Beck's assertion that an accord had been reached.

Before trial, Beck and Beco filed a motion in limine, seeking to exclude the letter from evidence. They argued that the letter was inadmissible under I.R.E. 408 because it contained "statements made in compromise negotiations." The district judge ruled that the letter would not be admitted as an exhibit during Davidson's case-in-chief. However, the judge denied the motion insofar as cross-examination was concerned.[2] At trial Beck testified about the accord. During cross-examination, Davidson's attorney read into the record several excerpts from the letter. They included the statement that a previous offer had been "refused" and the statement acknowledging existence of a debt. The jury later returned a verdict for Davidson. This appeal followed.

I

Beck and Beco contend that the letter was used improperly at trial. We examine this contention from three perspectives. First, we consider whether the issue has been preserved for appellate review. Next

---

1. As indicated by the case caption, Davidson brought this action not only against Beco Construction Company, Inc. (originally known as Beco, Inc.), but also against a separate entity known as Beco Corporation. The relationship between these entities is explored in Part II of our opinion. For ease of reference, the word "Beco" is used to signify the entity known as Beco, Inc., or as Beco Construction Company, Inc. By suing Beco and Beck for the debt as originally billed, rather than for the debt as compromised, Davidson apparently took the position that any compromise had been nullified by the breakdown in arrangements to pay the balance. The correctness of this position has not been raised as an issue on appeal.

2. The judge's ruling was delivered from the bench, as follows:

Well, maybe you need to make a further statement in regard to it, but my ruling would be to allow your motion in limine as to the letter being introduced. *I'll not let him introduce the letter as an exhibit. But that will not take care of the question . . . whether or not he can use it in cross-examination. My opinion is that he can use it in cross-examination.* I am not going to be able to rule on it now because I don't know what [Beck] is going to say from the witness stand.

And so I don't think any further argument would help the Court because I'm going to have to wait and see what they say from the witness stand. But I'll just tell you ahead of time my opinion is that I'll probably let him use the letter. It apparently is making a prior inconsistent statement; even through you. You were his agent. And I think that it can be used in that way. [Emphasis added.]

The judge's language elicits several observations on our part. First, although the judge referred to a possible future ruling, no such ruling occurred. The judge's comments from the bench made his position clear as it related to cross-examination. The motion in limine was effectively denied on that point. Second, despite the judge's reference to a "prior inconsistent statement," he did not say that use of the letter on cross-examination would be limited to that statement. Finally, the judge's reference to the statement of an "agent" touched upon a potentially nettlesome question as to whether a witness properly can be "impeached" with prior extrajudicial statements made by his lawyer. However, this question has not been argued by the parties on appeal, nor was it debated below. We will not address it *sua sponte.*

we discuss limitations upon the use of statements made in settlement negotiations. Finally, we apply those limitations to the case at hand.

### A

■ In general, an issue concerning the use or admission of evidence must be preserved for appellate review by making a timely objection in the trial court. *See* Strother, *Framing and Preserving Issues on Appeal,* IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, 1985). Here, as we have noted, Beck and Beco filed a pretrial motion in limine, seeking to exclude the letter for all purposes. The motion was denied with respect to cross-examination. Beck and Beco did not renew their objection at trial when opposing counsel used the letter. Davidson now claims that any challenge to the letter's use was waived. We disagree.

■ Despite being a relatively recent phenomenon, the motion in limine has obtained widespread acceptance in state and federal courts. *See* Annotation, *Motions to Exclude Prejudicial Evidence,* 63 A.L. R.3d 311 (1975). We have recognized the importance of the motion. *See Johnson v. Emerson,* 103 Idaho 350, 647 P.2d 806 (Ct. App.1982). It enables a judge to rule on evidence without first exposing it to the jury. It avoids juror bias occasionally generated by objections to evidence during trial. The court's ruling on the motion enables counsel on both sides to make strategic decisions before trial concerning the content and order of evidence to be presented. *See* E. CLEARY, McCORMICK ON EVIDENCE § 52 (3d ed. 1984) (hereinafter McCORMICK); M. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 103.8 (2d ed. 1986) (hereinafter GRAHAM).

We acknowledge that many other courts ascribe a lesser degree of importance to the motion in limine. They hold that even if the motion has been made and denied, the moving party must restate his objection when the evidence is offered at trial. Unless the objection is renewed, any appellate challenge to the judge's ruling is deemed to be waived. *See, e.g., Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322 (8th Cir.1985); *Collins v. Wayne Corp.,* 621 F.2d 777 (5th Cir.1980); *Douglas v. Lombardino,* 236 Kan. 471, 693 P.2d 1138 (1985); *Zehner v. Post Oak Oil Co.,* 640 P.2d 991 (Okl.App.1982). These courts take the position that because the ruling in limine is based on anticipated proof of facts, it is only a preliminary expression of a trial judge's view on the use or admissibility of the evidence. The judge must be reminded of his earlier ruling and must be given an opportunity to reconsider it in light of events during the trial. *Collins v. Wayne Corp., supra.*

We think it may be prudent in some cases for counsel to invite reconsideration of a judge's ruling in limine; but it does not necessarily follow that failure to do so should bar examination of the issue on appeal. We find more persuasive the reasoning of courts which have held that if a trial judge denies a motion in limine, counsel need not renew his objection at trial. *E.g., American Home Assurance v. Sunshine Supermarket, Inc.,* 753 F.2d 321 (3d Cir.1985); *Sheehy v. Southern Pacific Transportation Co.,* 631 F.2d 649 (9th Cir. 1980). As one such court has observed, "All the purposes of an objection have already been fulfilled by the proceedings on the motion in limine. The trial court has been apprised of the possible error in admitting the evidence and has made its ruling, and the record has been perfected for appeal purposes." *Harley-Davidson Motor Co., Inc. v. Daniel,* 244 Ga. 284, 260 S.E.2d 20 (1979).

Although our Supreme Court has not confronted this precise question, we think it would eschew the necessity of a renewed objection. In *Lasselle v. Special Products Co.,* 106 Idaho 170, 677 P.2d 483 (1984), the Court held that if a trial judge denies a motion to use a proffered special verdict form, the moving party need not later object to the verdict form actually used. "Normally," the Court said, "if a party makes his position known to the court he

need not repeat his objection when the court takes contrary action." *Id.* at 173, 677 P.2d at 486. The Court quoted with approval one commentator's statement that a rule requiring repeated objection exacts a high price in the form of waiver. The rule "would seem to create a real trap for the unwary or unskilled, and it is certainly doubtful whether the benefit of a double warning to the trial judge is worth such a price." Comment, *Special Verdicts: Rule 49 of the Federal Rules of Civil Procedure,* 74 YALE L.J. 483, 510 n. 89 (1965).

The same can be said of requiring an evidentiary objection to be repeated after a motion in limine has been denied. Moreover, requiring counsel to repeat the objection would conflict with the policy underlying I.R.C.P. 46. The rule provides that "[f]ormal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time the ruling of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor...." *Cf. American Home Assurance v. Sunshine Supermarket, Inc., supra* (applying F.R.C.P. 46).

Seasoned trial lawyers know that objecting in the presence of a jury may serve only to highlight the evidence in question. As noted by McCORMICK, *supra* at 133, "Jurors want to know the facts, and they may well look on objections as attempts to hide the facts.... If an objection has little chance of being sustained ... it should usually not be made." In addition, a key purpose of the motion in limine—enabling counsel to make strategic decisions before trial—may be defeated if renewed objec-

tions are required. When counsel knows in advance that the court will allow certain damaging evidence to be used at trial, he may choose to introduce the evidence himself in order to ameliorate the adverse impact. *See Reyes v. Missouri Pacific Railroad Co.,* 589 F.2d 791 (5th Cir.1979); *Johnson v. Emerson, supra.* This choice would become virtually useless if counsel were compelled to voice his objection to the evidence when it was presented.

▆▆▆ In light of all these considerations, we hold that where a judge has denied a motion in limine, failure to renew the objection at trial will not ordinarily constitute a waiver of the issue on appeal.[3] The motion will serve as a continuing objection unless counsel plainly abandons the objection by his subsequent words or conduct, or unless the evidence is offered at trial for a purpose that the motion did not seek to foreclose.[4] *See* C. WRIGHT & K. GRAHAM, 21 FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5037, n. 39 (1977) (hereinafter WRIGHT & GRAHAM). In this case, counsel for Beck and Beco orally stipulated during trial that the opening paragraph of the letter, referring to Beck's interests in several business corporations, could be admitted. To that extent the previous objection was waived. However, counsel did not abandon his objection to using the rest of the letter for any purpose; indeed, the stipulation was coupled with a reminder to the judge about the earlier motion in limine. Neither were the other excerpts from the letter used for any purpose unforeseen when the motion was made. We conclude that counsel's subsequent failure to renew his objection did not constitute a waiver of the issue on appeal.

3. Our holding does not affect the requirement in criminal cases that a defendant must take the stand and testify in order to preserve an issue as to whether the judge improperly ruled that impeachment with evidence of prior convictions would be allowed. *See Luce v. United States,* 469 U.S. 809, 105 S.Ct. 69, 83 L.Ed.2d 19 (1984); *State v. Garza,* 109 Idaho 40, 704 P.2d 944 (Ct. App.1985). Our holding simply means that if a motion in limine has been made and denied, defense counsel need not repeat the objection when the evidence is offered during the trial.

4. In some instances where a motion in limine has been denied and counsel for the moving party decides to introduce the evidence himself, his action might be misinterpreted as an abandonment of his objection. Such a potential misunderstanding could be avoided if counsel simply were to advise the court on the record that he is acting in response to the court's earlier ruling. This could be done outside the presence of the jury, or it could be couched in broad terms that would not convey any prejudicial connotation to the jury.

## B

We now examine the limitations upon using settlement offers in evidence. These limitations long have existed in Idaho law. *See, e.g., Whitney v. Cleveland,* 13 Idaho 558, 91 P. 176 (1907). They are intended to promote settlements, a public policy recently reiterated by our Supreme Court. *See Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986). The limitations are defined by Rule 408, Idaho Rules of Evidence. The rule provides as follows:

COMPROMISE AND OFFERS TO COMPROMISE—*Evidence of* (1) furnishing, *offering,* or promising to furnish, or (2) accepting, offering, or promising to accept, *a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim* or any other claim. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule does not require exclusion if the evidence is offered for another purpose,* such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. [Emphasis added.]

Rule 408, which is identical to its federal counterpart, flatly prohibits the use of settlement negotiations to prove "liability for, invalidity of, or amount of" a claim. Indeed, the federal rule's prohibition had been adopted by our Supreme Court even before Idaho Rule 408 was promulgated. *See Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980), *overruled on other grounds, Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983). However, the question posed by this case is one not confronted in *Hatfield* and not addressed specifically by the rule. The question is whether evidence of settlement negotiations may be used to impeach contrary statements at trial.

This question illustrates a tension between the truth-seeking function of a trial and the policy of encouraging settlements. Scholars are divided on how the tension should be resolved. Some commentators believe that allowing impeachment could defeat the policy of encouraging settlements. *See* K. REDDEN & S. SALTZBURG, FEDERAL RULES OF EVIDENCE MANUAL 285 (4th ed. 1985) ("[o]pening the door to impeachment evidence on a regular basis may well result in more restricted negotiations"); *accord* GRAHAM, *supra,* § 408.1. Others have argued that encouragement of settlements must yield to the ascertainment of truth where misrepresentations allegedly have been made from the witness stand. *See* D. LOUISELL & C. MUELLER, 2 FEDERAL EVIDENCE § 172 (1985) ("protecting the settlement process to the point of shielding apparently perjured testimony seems excessive"); 23 WRIGHT & GRAHAM, *supra,* § 5314. The language of the rule itself—allowing evidence to be admitted for purposes other than proof of "liability for, invalidity of, or amount of" a claim—plainly suggests that the policy of encouraging settlements is restricted. Although impeachment is not among the purposes listed in the rule, the list is preceded by the phrase "such as." It is not exclusive. *See* REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE at p. C 408–1 (December 16, 1983).

■ We believe the policy of encouraging settlements stops short of being absolute. Rule 408 refrains from imposing an explicit ban against the use of statements made in settlement negotiations for the purpose of revealing the falsity of contrary statements made in the courtroom.[5] We

---

5. Beck and Beco contend that the federal version of Rule 408 was construed in *Hatfield v. Max Rouse & Sons Northwest, supra,* to prohibit *any* use of statements in settlement negotiations. Our attention is invited to the Supreme Court's statement that "[b]ecause of its encouragement

decline to infer such a prohibition. Rather, we hold that prior inconsistent statements made during settlement negotiations may be used for the purpose of impeachment. Although very few courts in other jurisdictions have tackled this issue, their decisions are in accord with our holding today. *See County of Hennepin v. AFG Industries, Inc.,* 726 F.2d 149 (8th Cir.1984); *Missouri Pacific Railway Co. v. Arkansas Sheriff's Boys' Ranch,* 280 Ark. 53, 655 S.W.2d 389 (1983).

Our holding is a narrow one. A trial court *may* admit evidence of settlement negotiations when contrary testimony has been given at trial, but the court is not *required* to do so. When evidence is offered for a purpose other than proving "liability for, invalidity of, or amount of" a claim, the decision to admit such evidence generally is committed to the discretion of the trial court. *See Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (1986) (discretionary standard applied where evidence of settlement is offered for purpose of showing bias). The trial judge must weigh the probative value of the evidence for the limited purpose of impeachment against the risk that unfair prejudice will result if the triers of fact improperly use the evidence to evaluate the merits of a claim or defense. *See* McCORMICK, *supra,* § 274; I.R.E. 403. Experienced judges and lawyers know that this risk is substantial, notwithstanding any cautionary instruction the court might give the jury. The risk may be minimized by excising any portions of the prior statement which are unnecessary to the impeachment process or which present a particular danger of impermissible use by the triers of fact. In any event, when exercising his discretion, the trial judge should be mindful that the competing values of truth-seeking and encouraging settlements are at stake. Consequently, a prior inconsistent statement made during settlement negotiations

should be admitted only if it strongly suggests that a witness is perjuring himself at trial or if any unfair prejudice is likely to be insubstantial.

### C

We now apply these guidelines to the case at hand. Our analysis is in two steps. First we address the contention that the trial judge erred in allowing Davidson's counsel to use portions of the settlement letter beyond the stipulated first paragraph. Second, we consider whether such error was harmless.

### 1

The letter was used on cross-examination for impeachment and to establish liability. As noted above, Davidson's counsel read into the record not only the language concerning the tractor offer but also a passage acknowledging the existence of a debt. In that passage, counsel for Beck and Beco stated, "My client does recognize that your client provided necessary services and is entitled to payment." Plainly, this language served no permissible purpose under Rule 408.

The tractor offer presents a closer question. The language in question is as follows:

> Beco, Inc., currently possesses a 301 John Deere Tractor Loader valued at approximately $14,000.00. Beco, Inc., has no currently [sic] use for this tractor and has attempted to sell it previously but has been unable to do so. [The lienholder] has agreed to release this tractor ... provided [the lienholder] is paid the difference between the principal owed to your client and its current value. If such an agreement is acceptable to you we will obtain a current appraisal for purposes of exchange. * * * By way of information, a similar offer was made to your client some time ago but it was refused.

of settlement negotiations, the Federal Rule's *blanket prohibition* is the best position ... and the one we adopt." 100 Idaho at 846, 606 P.2d at 950 (emphasis added). However, in the quoted passage, the Court merely was rejecting a common law distinction between statements of opinion and statements of fact. The Court did not discuss the use of settlement-related statements for purposes other than proof of "liability for, invalidity of, or amount of" a claim.

The record before us contains no indication that the trial court weighed the probative value of this evidence for impeachment against the risk of unfair prejudice. Accordingly, we must examine the issue independently. *Cf. State v. Carlson,* 108 Idaho 859, 861, 702 P.2d 897, 899 (Ct.App.1985) (independent review required where record fails to reflect trial judge's reasoning on a balancing question).

 The letter's statement that "a similar offer" had been "refused" was probative for the purpose of impeachment. It conflicted with Beck's assertion at trial that Davidson had accepted an earlier offer but then had failed to honor the accord. However, the conflict was not blatant. The distinction between an offer that had been "refused" and an offer that had been accepted but repudiated is one that could elude a lay witness. Moreover, as mentioned in footnote 2, *supra,* the word "refused" had been employed not by Beck but by his lawyer. Thus, although the letter cast some doubt on the veracity of Beck's testimony, it did not rise to the level of strongly suggesting perjury.

On the other hand, the risk of unfair prejudice was substantial and manifest. Any offer of compromise would invite an inference that the offeror believed his claim or defense to be weak. *See* McCORMICK, *supra,* § 274. Here, the problem was compounded by the fact that the settlement offer was accompanied by a statement bearing directly on the offeror's affirmative defense of an accord. When this excerpt from the letter is coupled with the excerpt acknowledging a debt, we believe the risk of unfair prejudice outweighed the probative value of the evidence. The trial court should not have allowed these excerpts from the letter to be used on cross-examination.

## 2

We now consider whether the error was harmless. Rule 61, I.R.C.P., provides as follows:

> HARMLESS ERROR—*No error in either the admission or the exclusion of evidence* and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties *is ground for* granting a new trial or for *setting aside a verdict* or for vacating, modifying, *or otherwise disturbing a judgment* or order, *unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.* [Emphasis added.]

Our Supreme Court recently has placed an interpretive gloss upon Rule 61. In *Soria v. Sierra Pacific Airlines, supra,* the court held that it is not sufficient for an appellant to show abridgement of a substantial right; rather, the appellant also must show that if the error had not occurred, "a different result would have been probable." *Id.* 111 Idaho at 608, 726 P.2d at 720 (quoting *Rowett v. Kelly Canyon Ski Hill, Inc.,* 102 Idaho 708, 711, 639 P.2d 6, 9 (1981)).

*Soria* is a well-crafted opinion dealing with several complex and important issues. However, we must say that its treatment of harmless error gives us pause. It intertwines the standard for determining harmless error under Rule 61 with the standard for granting a new trial upon newly discovered evidence under Rule 59(a)(4). In our view, the standards are not the same. The rigorous test for setting aside a judgment upon discovery of new evidence creates an incentive for parties to investigate the facts thoroughly and to marshal their evidence at trial. No such incentive is needed, or could be imagined, for the parties to avoid error during the trial. Moreover, while a trial judge may be well situated to weigh evidence and to determine the probability of a different result if an error had not occurred, the appellate court, confronted with a cold record, is in a poor position to do so. Appellate courts seldom weigh evidence. An appellate court can, and should, do no more than to ascertain whether a substantial right has been abridged with respect to a material issue.

An issue is material if it reasonably could affect the outcome. To determine whether a different result would be "probable" is a task beyond an appellate court's proper function and, we think, beyond its competence.[6]

■ Nevertheless, the *Soria* formulation of Rule 61 presently is the law of Idaho. We are constrained to apply it here. The question is whether the jury probably would have returned a different verdict— i.e., would have accepted Beck's assertion that Davidson breached an accord—if the settlement letter had not been used improperly at trial. We think not. The record discloses that after the meeting in which the accord supposedly was reached, Davidson continued to send bills requesting payment of the principal balance owed, together with interest. These billings prompted no demand from Beck that the accord be honored. Indeed, it appears that an accord was not mentioned until this suit had been filed. Moreover, the accord would have required Davidson to pay a substantial sum (the difference between the balance owed him and the appraised value of the tractor) to a lienholder. In essence, Davidson would have been required to pay money in order to collect a debt, receiving in return a tractor that the debtor did not want and had been unable to sell. A jury well could have found that Davidson did not agree to such a proposal. In sum, embarking as we must upon the task of weighing the evidence, we conclude that Beck and Beco have not demonstrated the probability of a different result if the letter had not been used improperly at trial. Therefore, the error was harmless under the *Soria* interpretation of Rule 61.

## II

We now consider the issue of personal liability for a corporate debt. It will be recalled that the jury found Beck and his wife individually liable on the debt owed by Beco. The Becks moved for judgment in their favor, notwithstanding the verdict. The motion was denied.

■ Our Supreme Court recently discussed the circumstances in which a judgment n.o.v. may be granted. *See Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). The trial judge, viewing the evidence and all permissible inferences in a light most favorable to the nonmoving party, must determine whether there is substantial evidence to support the verdict. The moving party admits the truth of adverse evidence. The court may not resolve conflicts in the evidence. The motion will be granted only if reasonable minds could reach no conclusion except that urged by the moving party. Whether this test has been satisfied is a question on which we exercise free review.

■ In general, the stockholders of a corporation are not personally liable for corporate obligations. H. HENN & J. ALEXANDER, LAW OF CORPORATIONS § 146 (1983). However, there are circumstances where a court will "pierce the corporate veil" and hold a shareholder personally liable. The test is two-pronged:

> To warrant casting aside the legal fiction of distinct corporate existence * * * it must ... be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person had ceased; *and* it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances,

---

**6.** Appellate courts in criminal cases deem error to be harmless only if it is clear beyond a reasonable doubt that the jury would have reached the same result absent the error. *Chapman v California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981). Because the required quantum of proof in criminal cases is guilt beyond a reasonable doubt, an appellate court's inquiry is restricted to whether rational jurors could have entertained a reasonable doubt if error had not occurred. This is a much narrower intrusion into the fact-finding function, and involves far less weighing of the evidence, than the determination in a civil case that a different result would be "probable." Consequently, we find no analogous support in criminal procedure for the harmless error standard prescribed in *Soria*.

sanction a fraud or promote injustice. [Emphasis added.]

*Chick v. Tomlinson*, 96 Idaho 483, 486, 531 P.2d 573, 576 (1975) (quoting *Hayhurst v. Boyd*, 50 Idaho 752, 761, 300 P. 895, 897 (1931)).

The record in this case contains abundant evidence to demonstrate a unity of interest and ownership. The evidence indicates that Doyle Beck was the sole shareholder of Beco, Inc., when Davidson provided trucking services. A former officer of Beco, Inc., testified that Beck unilaterally made business decisions on behalf of the corporation. In fact, the jury reasonably could have inferred from the officer's testimony that Beco, Inc., never held director or shareholder meetings, and that the purported minutes of annual meetings were prepared at Beck's direction without such meetings actually being held. Furthermore, the record reveals that after Beco, Inc., began to experience financial difficulties, Beck formed another corporation, which he initially called D & G Corporation. The name Beco, Inc., was changed to Beco Construction Company, Inc., and D & G Corporation later became Beco Corporation. Thus, there were two corporate entities, each of which had been named and renamed. Although Davidson contracted with Beco, Inc. (the predecessor of Beco Construction Company, Inc.), he received a check at one point from Beco Corporation.

Upon this evidence the jury reasonably could have found that any distinction between Beck and his corporations, or between the corporations themselves, had been blurred. Such a finding would support the verdict returned against both corporations. The evidence also would satisfy the first prong of the test for personal liability—a unity of interest and ownership between Beck and Beco, Inc.

Our inquiry, then, is narrowed to the second prong—whether recognition of a corporate shield against personal liability would "sanction a fraud or promote injustice." Davidson argues that Beck engaged in a "corporate shell game" to defraud creditors. He notes that the second corpo-

ration, ultimately called Beco Corporation, was formed after Beco, Inc., had encountered financial problems. The two entities had deceptively similar names. Upon conflicting evidence the jury could have found that Beck began doing business through the second corporation. The jury also could have inferred that Beck intended to channel profitable business into the second corporation, leaving the first corporation without funds and its creditors without recourse.

But even if the jury made such findings, they merely would support the imposition of liability on both corporations. Beck acknowledged at trial that if one corporation was liable, the other would be too. Indeed, his counsel stipulated before trial that both corporations would be equally liable for any judgment entered against Beco, Inc. The "corporate shell game" had ended. The real question at trial was whether it was necessary to impose personal liability on the Becks as well, in order to prevent a fraud or to remedy an injustice.

On this question, Davidson's evidence failed. He did not show that Beck had drained both corporations of resources with which to pay a judgment. To the contrary, the record contains uncontradicted testimony that although Beco, Inc., was in financial trouble in the early 1980s, the corporation (renamed Beco Construction Company, Inc.) had by the time of trial a book value in excess of $150,000—many times the amount of the judgment eventually entered against it. The book value has not been challenged as unrealistic. Neither does the record show any other injustice requiring the corporate entities to be disregarded. The uncontradicted evidence reveals that Davidson entered into the contract with Beco, Inc., through its agent, a foreman at the construction site. At that time, he had no contact with Beck. However, Davidson knew that he was doing business with a corporation.

We conclude that Davidson has not adduced substantial evidence to warrant imposing personal liability upon the Becks. The trial judge erred in refusing to grant

Beck's motion for judgment n.o.v. On remand the court is directed to modify the judgment by deleting personal liability of the Becks.

## III

■ Finally, we turn to the question of attorney fees. The district judge made an award to Davidson under I.C. § 12–120(2), now codified as I.C. § 12–120(3). Beck and Beco have not challenged the applicability of the statute. However, they argue that the trial judge's award of $10,090 was excessive. The determination of a reasonable attorney fee rests within the sound discretion of the trial judge. It will not be overturned unless it reflects an abuse of such discretion. *Craft Wall of Idaho, Inc. v. Stonebraker*, 108 Idaho 704, 701 P.2d 324 (Ct.App.1985). In this case, the judge heard argument and received affidavits regarding a reasonable attorney fee. He determined that the fees requested by Davidson's counsel were appropriate in light of extensive discovery work and pretrial hearings. Although we do not expect that attorney fees often will approximate the principal amount of a claim, we cannot say that the judge abused his discretion in this instance.

However, our reversal of the judgment with respect to personal liability reopens the underlying question whether Davidson is a prevailing party. He has prevailed against the corporations but not against the Becks. He is a partially prevailing party. In such situations, the decision to award costs and attorney fees—like the determination of an amount—rests in the judge's sound discretion. *E.g., Chadderdon v. King*, 104 Idaho 406, 659 P.2d 160 (Ct.App.1983). We direct the district court on remand to reconsider the award of costs and attorney fees, bearing in mind the full array of issues raised in that court. If the judge again decides to award fees, he is at liberty to adjust the amount.

With respect to the issues raised on appeal, we find that Davidson has prevailed substantially, though not entirely. In contrast, the Becks are clear winners, and the corporations are clear losers, under today's decision. Accordingly, we award to Davidson, and against the corporations, the costs and attorney fees incurred by Davidson on appeal. We also award to Beck, and against Davidson, any separately identifiable attorney fees incurred by the Becks on the question of personal liability. The amounts of these awards shall be determined in accordance with Rules 40 and 41, I.A.R.

In summary, the judgment below is affirmed as to the corporations but reversed as to the Becks individually. On remand, the district court shall modify the judgment to comply with this opinion and shall reconsider the award of costs and attorney fees at trial. Costs and attorney fees on appeal are awarded to Davidson, and attorney fees are awarded to the Becks, as set forth above.

WALTERS, C.J., and SWANSTROM, J., concur.

## ADDENDUM

## ON DENIAL OF PETITION FOR REHEARING

BURNETT, Judge.

Appellants Beck and Beco argue that we have misapplied the standard of harmless error enunciated by our Supreme Court in *Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986). As readers of our lead opinion will recall, we interpreted *Soria* to hold that an error is harmless unless a different result would have been probable had the error not occurred. Appellants now contend that *Soria's* reference to the probability of a different result is merely a dictum appearing in a footnote. They further assert that even if harmless error does turn upon the probability of a different result, *Soria* requires such probability to be tested against evidence that might be adduced at a new trial in the future, not against the existing record of the trial actually conducted.

Although we share appellants' misgivings about *Soria,* we do not think a fair

reading of the Supreme Court's decision sustains their argument here. The issue in *Soria* was whether the trial court erred in excluding evidence of a settlement agreement among certain defendants. The Supreme Court said that such a ruling would not be reversed unless it was erroneous and it had a substantial influence in bringing about the verdict. The Court cited *Bambrough v. Bethers*, 552 P.2d 1286 (Utah 1976), and *Rowett v. Kelly Canyon Ski Hill, Inc.*, 102 Idaho 708, 639 P.2d 6 (1981), in support of this two-fold test for reversal. The Court then declared that it need not decide whether the trial judge had erred in excluding evidence of the settlement agreement because the error, if any, was harmless. The Court quoted the harmless error rule, I.R.C.P. 61, and examined the impact of the judge's ruling on the course of the trial. The Court concluded its discussion of harmless error as follows:

> The record in this case speaks for itself. We are convinced that Sierra Pacific has "not adequately demonstrated that had the [agreement's contents] been introduced at trial, a different result would have been probable." *Rowett, supra,* 102 Idaho at 711, 639 P.2d at 9.[13] *Accord. Bambrough, supra,* 552 P.2d at 1290. Even if there were error, it did not involve substantial justice and was not of the type that had a "substantial influence in bringing about the verdict." *Bambrough, supra,* 552 P.2d at 1290. Hence, we affirm the district court on this issue.

111 Idaho at 608, 726 P.2d at 720.

With this language the Supreme Court added rigor to the "substantial influence" test by requiring an appellant to show the probability of a different result if the error below had not occurred. In footnote 13 of its opinion, the court elaborated the reason for imposing such increased rigor:

> *Rowett* dealt with the standard of review for determining whether enlargements of two photographs which were admitted into evidence at trial justified the ordering of a new trial. The court held that the enlargements did not qualify as newly discovered evidence which would war-

rant a grant of a new trial pursuant to Rule 59(a)(4), I.R.C.P. *Rowett, supra,* 102 Idaho at 711, 639 P.2d at 9. It is clear then that *Rowett* dealt with a motion for new trial based on allegations of newly discovered evidence.

> In our case, Sierra Pacific argues that it received an unfair trial because the contents of the agreement were not disclosed. Hence, it argues that it should be granted a new trial pursuant to Rule 59(a)(1), I.R.C.P. Thus, while *Rowett* and this case involve motions for new trials based upon different subsections of Rule 59(a), there is no substantive reason to distinguish and not apply the rule of *Rowett* to our case. In both instances wise appellate review should only require the ordering of a new trial where there is a probability that a different result would occur upon the completion of the new trial. To rule otherwise would foster unnecessary litigation and expenses—something which was never intended to occur under Rule 59(a).

*Id.* at 608 n. 13, 726 P.2d at 720 n. 13.

In the present case, as in *Soria,* the appellants moved unsuccessfully for a new trial. Our lead opinion explains why we think the harmless error doctrine should not become entangled with a standard governing motions for new trials—particularly a unified standard that does not distinguish between motions based on newly discovered evidence and motions based on other grounds. Nevertheless, our Supreme Court has declared otherwise. The passages quoted above make it clear that an error is harmless under *Soria* unless the appellant shows that a different result would have been probable had the error not occurred. Contrary to the appellants' contention in this case, the *Soria* standard is not a mere dictum confined to a footnote. The standard is set forth and applied in the text of the Supreme Court's opinion; the footnote is explanatory. Moreover, in applying the probability standard, the Supreme Court focuses—as it must—on the existing record rather than on hypothetical evidence that might be adduced at a trial in

the future. As quoted previously, the Supreme Court declares: "The record in this case speaks for itself."

Accordingly, we must decline the appellants' invitation to find a way around *Soria* in order to reverse the judgment in the present case. If the *Soria* standard is to be altered or clarified, that task properly belongs to the Supreme Court.

WALTERS, C.J., and SWANSTROM, J., concur.